UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ROGER PARKER, on his own behalf and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PERDUE FOODS, LLC, <br><br> Defendant. | CIVIL ACTION <br> NO. 5:22-CV-00268-TES |

**REPLY IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS**

Defendant Perdue Foods LLC ("Perdue Foods" or "Defendant") respectfully submits this Reply in support of its Partial Motion to Dismiss Plaintiff's Complaint ("Defendant's Motion").[1] As discussed below, Plaintiff's arguments in his Response are unavailing. The arguments made in Defendant's Motion are not premature, and the cases upon which Plaintiff relies in his Response are inapposite and/or contrary to the overwhelming weight of Circuit Court Authority establishing otherwise. For these and other reasons discussed below and in Defendant's moving brief, Defendant's Motion should be granted.

---

[1] As an initial matter, Plaintiff begins his Response by arguing that "Perdue does not contest the core allegations of Parker's complaint," including allegations that Plaintiff and other growers were misclassified as independent contractors. (Doc. 18, Resp. at 8.) This is patently untrue. Plaintiff mistakes the standard of review applicable to a Rule 12 motion, whereby the Court (and Defendant) must treat well-pled allegations in the light most favorable to Plaintiff at this stage. A Rule 12 motion is not the appropriate mechanism by which to contest Plaintiff's factual allegations, and Defendant's Motion is focused on legal deficiencies in the Complaint. **When Defendant does file an Answer after adjudication of the instant Rule 12 Motion, Defendant intends to vehemently deny the core allegations of the Complaint, including any allegations that Plaintiff and the other growers were misclassified as independent contractors**. Defendant also separately responded to Plaintiff's Notice of Supplemental Authority as the merits of Plaintiff's independent contractor misclassification claims are not before the Court at this initial motion to dismiss stage.

I.     **Plaintiff May Not Pursue a Nationwide FLSA Collective Action in Georgia.**

  A.   **Dismissal of the Nationwide FLSA Collective Action is Not Premature.**

In Section III(A) of his Response, Plaintiff argues that Defendant's Motion seeking to dismiss Plaintiff's FLSA collective action on behalf of growers outside of Georgia is premature because no non-Georgia growers have yet opted in to the lawsuit. (Doc. 18, Resp. at 23.) Specifically, Plaintiff asserts that "[u]ntil a non-Georgia grower actually joins this case, the ruling Perdue seeks would be purely advisory and therefore improper." (*Id.*) Plaintiff's argument must fail. Plaintiff pled a nationwide collective action under the FLSA in his Complaint. There is nothing hypothetical, advisory, or improper about Defendant's motion to dismiss this claim now.

    1.   **The PSA and PPA both require non-Georgia growers to litigate in their respective home jurisdictions.**

Plaintiff offers three cases in support of his prematurity argument, none of which are persuasive. Importantly, none of these cases involve situations where, <u>as here</u>, all of the putative plaintiffs are obligated by both federal law and contract to bring disputes in their respective home forums. In this case, unlike those Plaintiff cites, Plaintiff and any putative plaintiffs are bound by both federal statute (PSA)[2] and contract (PPA)[3] to pursue any claims arising out of the independent contractor arrangement in the federal judicial district where performance of services under the contract occurred. (*See* PSA § 197b(a); *see also* Compl. ¶ 27; Ex. A, PPA at § VII(E).) More specifically, as noted in Section III(A)(2) of Defendant's Memorandum, PSA § 197b(a) requires that the "forum for resolving any dispute among the parties to a poultry growing arrangement . . .

---

[2] Packers and Stockyards Act, 7 U.S.C. §§ 181, *et seq.* ("PSA").

[3] As noted in Perdue's Memorandum of Law (Doc. 15-1), the Complaint references and quotes the Poultry Producer Agreement ("PPA"), which is considered part of the pleadings for purposes of the instant Motion. A copy of the PPA was referenced as Exhibit B to Perdue's Memorandum, but that exhibit was inadvertently not uploaded to ECF. Perdue is thus attaching a true and correct copy of the PPA as Exhibit A to this Reply.

that arises out of the arrangement or contract shall be located in the Federal judicial district in which the principle part of the performance takes place under the arrangement or contract." (Doc. 15-1, Mem. at 10.) Each PPA, which Plaintiff contends all growers sign, likewise contains a forum selection clause requiring the same.

In the Eleventh Circuit, "[f]orum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances" and such clauses provide a sufficient basis to dismiss class complaints at the motion to dismiss stage. *Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1345 (11th Cir. 2021) (internal quotation marks and citation omitted); *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1294-96 (11th Cir. 2022) (enforcing forum selection clause); (*Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281-82 (11th Cir. 2009) (granting motion to dismiss pursuant to valid forum selection clause). This presumption does not change in the context of the FLSA, whether an individual or collective action, and such matters are regularly resolved at this stage. *See, e.g., Sachs v. Bankers Life & Cas. Co.*, 2012 WL 1900033, at *3 (S.D. Fla. May 24, 2012) ("Under binding precedent from the Eleventh Circuit Court of Appeals and the United States Supreme Court, this court is therefore obligated to enforce this [choice of forum provision] of the parties' agreements.").[4] In his Response, Plaintiff does nothing to argue that this clause in the PPA, which he admits all growers sign, or the requirement in the PSA is unreasonable or unfair. Rather, he ignores this issue altogether. At this point, Plaintiff has waived any challenges to the same.

---

[4] *See also Levy v. Manors of Inverrary XII Ass'n*, 2020 WL 13469104, at *2 (S.D. Fla. Mar. 11, 2020) (enforcing forum selection provision in FLSA matter as "mandatory"); *Springer v. Riverbridge Commercial Ltd.*, 2010 WL 11504831 at *2 (S.D. Fla. Jan. 29, 2010) (dismissing single-plaintiff FLSA case based on Ireland forum selection clause). On this basis alone, the instant case is distinguishable from the legal authority Plaintiff relies on in his Response.

### 2. Perdue's Motion is ripe for review at this stage.

Plaintiff's argument regarding ripeness also must fail. *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) is easily distinguishable. Plaintiff cherry picked one sentence from the opinion, noting that the Supreme Court has admonished against adjudicating hypothetical or abstract disputes. (Doc. 18, Resp. at 24-25.) However, the issue at dispute in *Ramirez* was standing based on lack of concrete harm, which is not at issue here. *Ramirez* was brought under the Fair Credit Reporting Act with several thousand class members, the majority of whom were found to be without standing because "no concrete harm" occurred. The "hypothetical" scenario the court was discussing was the damage class plaintiffs would have suffered if harm had actually occurred to them. Here, conversely, Plaintiff is arguing that the scope of Plaintiff's FLSA collective action *as pled in the Complaint* is not ripe for review because such a determination would be based on "hypothetical future opt-in plaintiffs who worked for Perdue outside of Georgia." (Doc. 18, Resp. at 24.) However, Plaintiff affirmatively pled an FLSA collective action seeking inclusion of all growers "nationwide" or spanning "across the country," not just those in Georgia. (Compl. ¶¶ 1, 27, 35, 101.) This issue is not hypothetical—it is placed squarely at issue by Plaintiff's Complaint.

*King v. Wise Staffing*, 2020 WL 5110758 (N.D. Ala. Aug. 31, 2020) is also distinguishable. Plaintiff cites this case for the proposition that "courts have rejected similar efforts to raise *Bristol-Myers*-based personal jurisdiction arguments before any out-of-state plaintiffs have joined the case." (Doc. 18, Resp. at 25.) In *King*, one of the defendants moved to dismiss the claims of the named plaintiff for lack of personal jurisdiction, arguing that it was not the plaintiff's employer and did not have sufficient contacts with the forum state to confer personal jurisdiction. *King* at *1. The defendant did not move to dismiss or strike the FLSA collective action allegations. *Id.* In considering whether jurisdiction existed as to the named plaintiff's claims, the court found that it

4

did not have general jurisdiction based merely on defendant having conducted some business in the forum state. *Id.* at *4. But, the court found specific jurisdiction existed because the defendant "repeatedly held itself out to Plaintiff as her employer." *Id.* at *6. Thus, at issue before *King* was whether the court had jurisdiction over the named plaintiff's claims, not whether the plaintiff could then properly pursue a collective action including out-of-state putative class members.

Indeed, *Bristol-Myers* is only addressed as dicta in *King*, where the court observes in a footnote that the defendant suggested the named plaintiff may attempt to make non-resident plaintiffs part of the collective action if her claims were not dismissed. *Id.* at *7, n.4. The court stated it would not make rulings based on "anticipated conduct." *Id.* The defendant's speculation as to future non-resident class members was undercut by the fact that the plaintiff did not affirmatively plead that the putative class would span "across the country" or be "nationwide." (*Compare id.* at Docs. 1 & 81-2, *and* Compl. ¶¶ 1, 27, 35, 101.) That is not the case here, where Perdue is challenging the scope of the putative class as directly pled in Plaintiff's Complaint.

Where a plaintiff has affirmatively pled a nationwide or multi-state FLSA collective action in a court lacking general jurisdiction over the defendant, as here, several district courts have either dismissed such claims or have narrowed the scope of any putative class on a motion to dismiss in reliance on *Bristol-Myers. See, e.g., Bone v. XTO Energy, Inc.*, 561 F.Supp.3d 1132 (2021) (limiting FLSA collective action to New Mexico in response to a motion to dismiss premised on *Bristol-Myers* and the lack of personal jurisdiction over out-of-state putative class members); *Hutt v. Greenix Pest Control, LLC*, 2020 WL 6892013, at *7 (S.D. Ohio Nov. 24, 2020), reconsideration denied, 2021 WL 1247788 (S.D. Ohio Apr. 5, 2021) (granting in part a motion to dismiss and holding that "exercising personal jurisdiction over [the defendant] with respect to any non-Ohio putative class member's FLSA claims would violate due process."); *White v. Steak N Shake Inc.*,

2020 WL 1703938, at *3 (E.D. Mo. Apr. 8, 2020) (granting a motion to dismiss and holding, "This Court also lacks specific jurisdiction . . . with respect to FLSA claims of non-Missouri employees. Where, as here, a court's subject-matter jurisdiction is based upon a federal statute that is silent regarding service of process . . . the Court may exercise personal jurisdiction only to the extent permitted by the forum state's long-arm statute.") (internal citations omitted).

Contrary to Plaintiff's assertions, the Court should address this argument now before the parties expend significant time and effort in nationwide discovery for a class that cannot exist as a matter of statute or contract. Plaintiff's argument that the Court should simply kick this briefing down the road is inconsistent with principles of judicial economy and the mandates of Fed. R. Civ. P. 1. *See id.* (the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding").

**B.     The Fourteenth Amendment Applies in Federal Court When Personal Jurisdiction is Pursuant to a State's Long-Arm Statute.**

Plaintiff's other arguments regarding personal jurisdiction fare no better. Plaintiff argues that "[p]ersonal jurisdiction in federal court is controlled by the Fifth Amendment, not the Fourteenth . . . .", ultimately asserting that the contacts that should be analyzed to determine jurisdiction are Defendant's contacts with the United States, not with Georgia. (*See* Doc. 18, Resp. at 23.) Plaintiff ignores that, pursuant to Rule 4(k)(1), it is the Fourteenth Amendment that must be used when assessing personal jurisdiction conferred by a state's long-arm statute. *See e.g., Palmer v. Harris-Britt*, 2019 WL 13193929, at *1–2, n.2 (M.D. Ga. July 22, 2019) (citation omitted); *see also* Fed. R. Civ. P. 4(k)(1). Indeed, without general jurisdiction, a federal statute providing nationwide service, or a party joined pursuant to Rules 14 or 19 – none of which are present here – Rule 4(k)(1)(A) is the *only* avenue to establish personal jurisdiction in Georgia. Fed. R. Civ. P. 4(k)(1)(A)–(C); *Palmer*, 2019 WL 13193929 at n.2.

In sum, Plaintiff asks this Court to side with First Circuit's stand-alone opinion on this issue rather than joining the majority of circuits that have considered the issue in the context of *Bristol-Myers* and FLSA collective actions. The majority of federal circuits that have considered the issue are correct, and this Court should find the same. The fact that the forum for non-Georgia growers' claims is outside of Georgia as a matter of both contract and statute, and jurisdiction expressly *does not exist* for that reason, only further supports that conclusion in the instant case.

### C. Any Eleventh Circuit District Court Decisions Declining to Apply *Bristol-Myers* Predate Circuit Court Authority and Are Not Binding.

Plaintiff argues that "every district court to address the issue in this Circuit has correctly recognized that nothing in Bristol-Myers limits a federal court's power to exercise personal jurisdiction over nationwide FLSA collective actions." (Doc. 18, Resp. at 31.) Yet Plaintiff ignores that this small number of opinions predates guidance from any circuit court. Furthermore, none of these district court decisions addressed Rule 4(k)(1) whatsoever. This discussion was the crux of every appellate circuit court decision taking up the issue. Finally, as noted above, none of the divergent few cases from other districts in this Circuit involved circumstances akin to the instant action – where both as a matter of statute (PSA) and contract (PPA), growers outside of Georgia are bound to pursue their claims outside of Georgia and in the states in which their farms are located and/or services are performed. Accordingly, the Court should dismiss Plaintiff's collective action allegations to the extent he purports to represent growers outside of Georgia.

## II. Perdue's Lack of Standing Argument Is Not Premature and Does Not Depend on the Resolution of Class Certification Issues.

Plaintiff argues that Perdue's lack of standing argument is also premature because class certification issues are "logically antecedent" to the standing concerns. (Doc. 18, Resp. at 33.) More specifically, Plaintiff argues that the standing concerns raised by Perdue may never come to fruition because: (1) named plaintiffs who worked for Perdue in other states may join this action

before the class certification stage, or (2) Plaintiff may represent growers from other states if the common law of those states closely mirrors the common law of Georgia. (*Id.*)

Plaintiff's argument fails on both counts. First, Plaintiff and other growers are required by both federal statute (PSA) and contract (PPA) to bring such claims in the federal district where their farm is or was located. (*See* PSA § 197b(a); *see also* Compl. ¶ 27; Ex. A, PPA at § VII(E).) Second, the requirement—set forth in both the PSA and the PPA—that each grower bring such claims in the federal judicial district in which his or her farm is located applies regardless of the substantive law of the state in which that farm is located. (*See* PSA § 197b(a); *see also* Compl. ¶ 27; Ex. A, PPA at § VII(E).). As discussed in Section I(A)(1) above, in the Eleventh Circuit, such forum selection clauses are presumptively valid, and routinely relied on in granting motions to dismiss in class, collective, and FLSA actions. *See Turner*, 9 F.4th at 1345 (class action with tort claim); *Sachs*, 2012 WL 1900033, at *2-3 (collective action involving ICs), *Levy*, 2020 WL 13469104, at *2 (single plaintiff FLSA case). Accordingly, pursuant to the PSA and the forum selection clause in the PPA, growers who worked in states other than Georgia are precluded from joining this case, regardless of how closely the common law of their home state mirrors that of Georgia. Thus, the certification issues identified by Plaintiff are not "logically antecedent" to, nor do they provide a reason for deferring resolution of, the standing issue raised by Perdue.

**III.    Plaintiff and Other Growers Are Exempt from Overtime under the FLSA.**

Plaintiff's Response fares no better as to the agricultural exemption. As discussed in Perdue's moving brief, the basis for the exemption is clear on the face of the Complaint itself. (*See* Doc 15-1, Mem. at 5, 14-15.) *See also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense ... appears on the face of the complaint.") Plaintiff admits that he and other growers rendered services to Perdue by accepting broiler chickens

8

and growing them on their farms. (Compl. ¶¶ 16, 40, 101, 128-29.) Likewise, in his Response, Plaintiff states that this case relates to work he and others performed "as broiler chicken farmers," and is fundamentally about the treatment of "American farmers." (ECF 18, Resp. at 1.) By law, the raising of poultry is exempt from the FLSA overtime requirements. *See* 29 U.S.C. § 213(b)(12); 29 U.S.C. § 203(f) (stating that "[a]griculture" includes "the raising of . . . poultry"); *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003) ("Title 29 U.S.C. § 213(b)(12) provides that the requirements of section 207 shall not apply to "any employee employed in agriculture.").

Moreover, Plaintiff's argument that the other activities, namely housing and feeding the chickens (Compl. ¶ 50), cleaning and maintenance for future delivery of chickens (*id.* ¶¶ 52-53), installing feeding equipment, water lines, and ventilation fans (*id.* ¶¶ 59-60), placing identifying signs on farm (*id.* ¶ 74), and building and upgrading houses for chickens (*id.* ¶ 78), create fact-intensive inquiries regarding the potential application of the exemption also fails outright. These are not "non-exempt activities" as Plaintiff contends, which could create the need to perform the fact-based inquiries Plaintiff discusses. Rather, these are activities that are clearly incidental to and performed in conjunction with the actual farming operation. Therefore, they constitute exempt agricultural work under the FLSA as a matter of law.

More specifically, 29 C.F.R. § 780.158(a) notes that agriculture includes "practices performed by a farmer or on a farm as incident to or in conjunction with the farming operations" such as "maintenance and protective work." *See also Borja v. Hines Nurseries, Inc.*, 172 F. App'x 927, 928 (11th Cir. 2006) (citing 29 U.S.C. § 213(b)(12); 29 C.F.R. §§ 780. 153, 780.154, 780.155, 780.158) ("Both the Department of Labor and Supreme Court have made clear that activities that are secondary to farming, but supportive of it, are included within the agricultural exemptions to

the FLSA."). Various courts have also found that individuals who perform maintenance of the facilities and equipment for the farming operation—or activities that are secondary to agriculture but supportive of it— are engaged in agriculture. *See Sariol v. Fla. Crystals Corp.*, 490 F.3d 1277, 1279–80 (11th Cir. 2007) (delivering fuel to farm machinery and maintaining equipment are within secondary agriculture); s*ee also Chhum v. Anstett*, 2016 WL 4203389, at *3 (D. Conn. Aug. 9, 2016) (maintaining the farm grounds, repairing fences on pastures that housed animals, and mowing the lawns were incidental to and in conjunction with his primary agricultural work of raising livestock); *Hedrick v. S. States Co-op. Inc*., 2010 WL 3834631, at *4–5, 7 (E.D.N.C. Sept. 30, 2010) (other tasks such as "pipe fitting," and "electrical work" on fish farm was within secondary meaning of agriculture). All of the activities Plaintiff cites as being "non-exempt" are clearly secondary to agriculture and incidental to and performed in conjunction with it, making such work exempt agricultural work itself as well.

Strikingly, Plaintiff fails to cite to any cases where a chicken grower, who also performed construction or maintenance of facilities on his own farm and upkeep of the same in connection with the chicken growing activities, was found to not be engaged in agriculture. Instead, Plaintiff cites cases where workers on farms performed work that *was not* incidental to the actual farming operation, such as retiling residential pools, cleaning office buildings, splitting wood for guests, and performing haunted hayrides. These cases are clearly inapposite here. In *Darowski*, for example, the court noted that plaintiff was required to perform tasks completely unrelated to the farm operation, such as the retiling of the defendant's indoor pool. *Darowski v. Wojewoda*, 2016 WL 4179840, at *1 (D. Conn. Aug. 7, 2016). In *Centeno-Bernuy*, the defendant conceded that plaintiff workers performed tasks unrelated to the farming operation such as assembling pie boxes, cooking at the chicken barbecues, working haunted hayrides and pig races, painting the floors of

the retail market, and landscaping defendant's home. *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 179 (W.D.N.Y. 2008). In *Camargo*, the court found that plaintiff's work washing vehicles, cleaning an office building and private residences, filling in pot holes in roads, splitting fire wood for residents or guests, washing windows, and hauling brush was not directly incident to the agricultural operations of the cattle and tree farm. *Camargo v. Trammell Crow Int. Co.*, 318 F. Supp. 2d 443, 445–46 (E.D. Tex. 2004). Further, these cases all involved individuals employed around the farm, *not the actual farmer who ow*n*ed and operated the farm like Plaintiff.*

In contrast, Plaintiff is explicitly engaged in the growing of chickens on his property, which includes the requisite maintenance of the facilities housing the chickens. This is primary agricultural and farming work on its face, leaving no need for any additional fact-based inquiries. *See Holly Farms v. NLRB,* 517 U.S. 392, 399-400 (1996) (discussing that independent growers of broiler chickens were engaged in "primary agriculture",[5] leaving no reason for the Court to engage in the secondary agriculture analysis, which was required for the live-haul crews.) This, alone, renders this case distinguishable from the *Herman* case upon which Plaintiff relies for his argument that discovery is needed on this exemption because in *Herman*, the plaintiff was not engaged in primary agriculture as defined by the regulations itself.[6]

---

[5] While *Holly Farms* was decided in the context of the NLRA, the Supreme Court explained that that the "agricultural laborer" definition under the NLRA "shall derive meaning from the definition of agriculture" under the FLSA. 517 U.S. at 394. Thus, the Supreme Court's reasoning in *Holly Farms* on the growers is directly on point.

[6] *Herman v. Continental Grain Co.*, 80 F. Supp. 2d 1290 (M.D. Ala. 20000), cited by Plaintiff, explicitly discusses *Holly Farms* and notes that, unlike *Holly Farms*, which involved chicken growers engaged in "primary agriculture," the *Herman* case involved live-haul crew workers, which raised fact-based inquiries to determine if they were engaged in secondary agriculture. The court did not hold, as Plaintiff suggests, that the determination of the exemption *always involves* fact-based inquiries, rendering adjudication of the exemption inappropriate on a motion to dismiss.

11

**IV.    Rule 9(b) Supports Dismissing Plaintiff's Negligent Misrepresentation and Fraud Claims for Failure to Plead with Requisite Specificity.**

Perdue's Motion demonstrates that Plaintiff's negligent misrepresentation and fraud claims should be dismissed because they were not pled with particularity as required under Fed. R. Civ. P. 9(b). Perdue's Motion explains how Plaintiff fails to allege the "person" or "who" required under Rule 9(b) because Plaintiff impermissibly lumps two defendants together throughout the Complaint and neglects to specify the "when" and "where" the alleged misrepresentations were made. (Doc. 15-1, Mem. at 28-29.) In response, Plaintiff asserts: (1) that Perdue waived its contention that Rule 9(b) applies because Perdue allegedly fails to cite any case law for its position, and (2) that Rule 9(b) is nevertheless inapplicable to the cause of action. (Doc. 18, Resp. at 15-18.) Finally, Plaintiff alleges that even if Rule 9(b) applies, his negligent misrepresentation and fraud claims pass muster under Rule 9(b). (*Id.*)

The Court should reject each of Plaintiff's arguments. First, contrary to Plaintiff's assertion, Perdue's Motion cites Eleventh Circuit case law holding that negligent misrepresentation claims must satisfy Rule 9(b). (Doc. 15-1, Mem. at 18-19 (citing *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012) & 27 (referring to Section III(C) of brief where the *Smith* case is cited).) *Smith* has been cited in other cases for the proposition that "[i]t is by now fairly clear that Rule 9(b) applies to negligent misrepresentation claims in the Eleventh Circuit." *See Intellicig USA LLC v. CN Creative Ltd.*, 2016 WL 5402242, at *8, n.8 (N.D. Ga. July 13, 2016) (citing *Smith*). Therefore, Perdue neither waived its argument nor failed to cite case law for its position. Instead, Perdue cited controlling legal authority holding that Rule 9(b) applies to Plaintiff's negligent misrepresentation claim, which Plaintiff conveniently ignores in his Response. (*See* Doc. 18, Resp. at 15-18.)

Further, there is no legitimate reason for applying a different pleading standard to Plaintiff's negligent misrepresentation claim in relation to his fraud claim since both claims arise from the same alleged pre-contractual and contractual misrepresentations. (Doc 18, Resp. at 18–20.) Indeed, in discussing his claims on pages 18 through 20 of the Response, he melds the two claims into one. (*Id.*) Under such circumstances, other Circuit Courts, including the Eleventh Circuit's sister court—the Fifth Circuit—apply Rule 9(b) to negligent misrepresentation claims when they are based on the same misrepresentations as a fraud claim pled in the same complaint. *See, e.g., Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Second, although Plaintiff claims the Complaint satisfies Rule 9(b)'s particularity requirement, Plaintiff improperly uses his Response to rewrite the Complaint's allegations. Specifically, Plaintiff attempts to cure the defects with both claims by announcing that Rule 9(b)'s "who" requirement is now met because he is dismissing Defendant Perdue Farms, Inc. from the lawsuit. (Doc. 18, Resp. at 18, n.5.) But this last-minute material change in parties fails to cure the unspecific allegations lumping the two defendants together and still does not identify the individual(s) employed with the remaining Defendant who allegedly made the misrepresentations.

Plaintiff's Response also attempts to explain "'when' and 'where' the misrepresentations occurred"—that is, the timeframe "when and where Perdue offered the agreements containing the false statements to Parker and the putative class members"—but Plaintiff fails to show where he alleged these facts in his Complaint. (*Compare* Doc. 18, Resp. at 19 *with* Compl.) This omission is not surprising because these "facts" do not exist in the pleading. (*See generally* Compl.)

Moreover, the chief case upon which Plaintiff relies for the argument that his claims survive dismissal under Rule 9(b) (*Am. Family Life Assurance Co. of Columbus v. Intervoice, Inc.*) supports Perdue's argument that Plaintiff's claim are insufficiently pled. In *Intervoice*, the

plaintiff's complaint specifically identified the contract at issue, the date the contract was executed, the provisions of the contract alleged to include misrepresentations, when the alleged pre-contractual misrepresentations were made, and affixed a copy of the contract to the pleading. 659 F. Supp. 2d 1271, 1273, 1280-1281. (M.D. Ga. 2009). Here, the Complaint lacks the specificity of the pleading in *Intervoice.* For instance, the Complaint does not identify the PPA(s) at issue, the date each PPA was signed, when the alleged pre-contractual representations were made to Plaintiff, and how many PPAs Plaintiff has signed during his relationship with Perdue.[7] (*See, e.g.,* Compl. 16, 27-30, 35, & 93.) Instead, the Complaint merely alleges that "Parker worked as a grower for Perdue through 2019." (*Id.* ¶ 93.) The Complaint also fails to attach the PPAs between the parties. Considering these defects, Rule 9(b) and *Intervoice* support dismissing the claims.

In sum, no matter how much gloss Plaintiff's Response applies to cover the fatal flaws with his Complaint's deficient allegations, his negligent misrepresentation and fraud claims do not satisfy Rule 9(b)'s heightened pleading standard and should be dismissed.

## V.    Plaintiff Concedes His PSA § 192 Claim is Barred.

Perdue requests that the Court dismiss Count Eight of the Complaint alleging violations of Section 192 of the PSA because Plaintiff fails to allege facts showing an anticompetitive effect or

---

[7] The need for such information is important here because identifying the applicable PPAs will determine whether they include release and merger clauses like that in the last PPA that Plaintiff signed. (*See* Ex. A § VII.C.) Because Plaintiff has affirmed the contract and is seeking fraud damages, the applicable PPA's merger clause bars Plaintiff's negligent and misrepresentation claims to the extent they are based on pre-contractual misrepresentations (*see* Compl. ¶ 16) on the grounds of estoppel and for lack of reliance. *Intervoice*, 659 F.Supp.2d at 1283-1284; *Porter Pizza Box of Fla., Inc. v. Pratt Corrugated Holdings, Inc.*, 2018 WL 11447570, at *5-6 (N.D. Ga. Nov. 8, 2018). If Plaintiff signed multiple PPAs, then the doctrines of release, waiver, and ratification arise to bar Plaintiff's claims because he signed multiple PPAs with actual knowledge of the alleged "control" Perdue purportedly exerts over its contract broiler growers. *See Porter*, 2018 WL 11447570, at *5 (fraud claims based on contractual terms are subject to contract defenses). Finally, properly pled allegations may show that his claims are barred by limitations.

likelihood thereof. (Doc. 15-1, Mem. at 21-27.) In response, Plaintiff "agrees with Perdue that, for" Plaintiff's PSA § 192 claim, "Eleventh Circuit precedent *requires* a plaintiff to show an antitrust-like 'harm to competition,'" that "this Court is bound by the Eleventh Circuit's decisions," and that Plaintiff "*cannot satisfy* this pleading standard." (Doc. 18, Resp. at 10 n.2 & 37 (emphasis added).) Nevertheless, Plaintiff continues to "raise these arguments to preserve them for appeal." (*Id*. at 37.) Considering Plaintiff's admission that his PSA claim fails under controlling Eleventh Circuit precedent, the Court should dismiss the claim with prejudice.

## VI.   CONCLUSION

As set forth above and in Defendant's Motion, the Court should grant Defendant's Partial Motion to Dismiss in its entirety.

Respectfully submitted this 8th day of November 2022.

>*/s/ Margaret Santen*
>Margaret Santen
>GA Bar No. 578314
>Kevin P. Hishta
>GA Bar No. 357410
>Michael Oliver Eckard
>GA Bar No. 238550
>**OGLETREE, DEAKINS, NASH, SMOAK**
>   **& STEWART, P.C.**
>191 Peachtree St. NE, Suite 4800
>Atlanta, GA 30303
>Telephone:    404-881-1300
>Facsimile:    404-870-1732
>maggie.santen@ogletree.com
>kevin.hishta@ogletree.com
>michael.eckard@ogletree.com
>
>Clayton E. Bailey
>Admitted Pro Hac Vice
>**BAILEY BRAUER PLLC**
>8350 N. Central Expressway, Suite 650
>Dallas, Texas 75206
>Telephone: (214) 360-7433

                                  Facsimile:  (214) 360-7435
                                  cbailey@baileybrauer.com

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| ROGER PARKER, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERDUE FOODS, LLC,<br><br>Defendant. | CIVIL ACTION<br>NO. 5:22-CV-00268-TES |

## CERTIFICATE OF SERVICE

I certify that on November 8, 2022, I electronically filed the foregoing REPLY IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

T. Brandon Waddell
Jarred A. Klorfein
**CAPLAN COBB, LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, GA 30309
bwadell@caplancobb.com
jklorfein@caplancobb.com

/s/ *Margaret Santen*
Margaret Santen
GA Bar No. 578314
**OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.**
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone:   404-881-1300
Facsimile:   404-870-1732
maggie.santen@ogletree.com

17