IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ROGER PARKER, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. |
| | **5:22-cv-00268-TES** |
| PERDUE FARMS, INC., *et al.*, | |
| *Defendants.* | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS

Before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Complaint [Doc. 15]. After Defendants filed the instant Motion, Plaintiff voluntarily dismissed Perdue Farms, Inc., leaving only Perdue Foods, LLC as a named defendant. *See* [Doc. 19]; [Doc. 20].[1]

## BACKGROUND

On July 22, 2022, Plaintiff filed his Complaint [Doc. 1] alleging Perdue misclassified him—and others similarly situated—as independent contractors instead of employees. [Doc. 1, ¶ 1]. Because of that misclassification, Plaintiff seeks relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), *et seq.*; and Packers & Stockyards Act, 7 U.S.C. § 192, *et seq.*; along with

---

[1] Because Perdue Foods, LLC is the only remaining Defendant, the Court refers to it as Perdue.

state law claims of fraud, breach of contract, unjust enrichment, and negligent misrepresentation. *See generally* [Doc. 1].

Plaintiff's Complaint alleges that Perdue Foods—the third largest broiler chicken company in the country—outsources "the process of raising birds to broiler growers," like Plaintiff, and considers them "independent farmers." [Doc. 1, ¶¶ 14–15]. In the recruiting process, Plaintiff alleges that Perdue promises these farmers "independence and financial success." [*Id.* at ¶ 16]. However, Plaintiff contends that Perdue controls "virtually every aspect of [the] growers' operations." [*Id.* at ¶ 18]. To be sure, Plaintiff contends that Perdue requires these farmers to agree to an exclusive contract—a Poultry Producer Agreement ("PPA")—with Perdue, which prohibits any visits to other farms associated with another integrator and requires construction of their farms in conformity with specific instructions from Perdue. [*Id.* at ¶¶ 19–25]. Perdue also monitors and trains these farmers throughout their time under the contract. [*Id.* at ¶ 26]. Perdue also utilizes supervisors who visit farms "at least weekly" to ensure compliance with Perdue's requirements. [*Id.* at ¶ 37]. Perdue also controls the timing, delivery, and number of birds in each flock. [*Id.* at ¶ 56]. Likewise, Perdue controls the medications, feed, and other supplies that farmers can use in the operation. [*Id.* at ¶¶ 55–58].

Plaintiff complains that he, and farmers like him, have absolutely no control over their own farming operations other than being left to pay the bills that Perdue runs up. Plaintiff alleges that Perdue requires precise specifications, often makes changes to

those required plans, and expects the farmers to pay for it. [*Id.* at ¶ 93].

Perdue filed the instant Motion on September 19, 2022, asking the Court to partially dismiss Plaintiff's Complaint. Namely, Perdue asks the Court to dismiss Plaintiff's FLSA claims, state-law class action claims, state-law fraud and negligent misrepresentation claims, and Packers & Stockyards Act claims. *See* [Doc. 15-1]. The Court addresses each in turn.

## LEGAL STANDARD

Perdue Foods seeks to dismiss Plaintiff's action against it for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). First, to state a claim for relief, a plaintiff must provide a "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). To do so, a plaintiff need only provide a "prima facie case of jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Indeed, the plaintiff need only provide affidavits or other evidence when the defendant files affidavits challenging personal jurisdiction. *Id.* Otherwise, the Court must accept as true the facts alleged in the plaintiff's complaint. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d

1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but

4

legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at

1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must

take all of the factual allegations in the complaint as true; they are not bound to accept a

legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must

"identify conclusory allegations and then discard them—not 'on the ground that they

are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to

the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the

claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence

to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other

grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint

"must be enough to raise a right to relief above the speculative level" and cannot

"merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at

545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual

enhancement'" will not survive against a motion to dismiss.  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the

complaint must allege enough facts "to raise a reasonable expectation that discovery

will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

### I.    FLSA Claims

Perdue first asks the Court to dismiss Plaintiff's FLSA claims "on behalf of putative plaintiffs outside of Georgia" because the Court "lacks jurisdiction over Defendant[] with regard to those claims." [Doc. 15-1, p. 5]. Second, Perdue contends that even if Plaintiff—and others similarly situated—were misclassified as independent contractors, they are covered by the FLSA's agriculture exemption. *See* 29 U.S.C. § 213(b)(12).

#### a.    Collective Action

In response to Perdue's Motion, Plaintiff argues that Perdue's personal jurisdiction argument is premature. As of the date of this Order, no out-of-state growers have opted into the action. Therefore, Plaintiff argues, and the Court agrees, that any personal jurisdiction determination over potential plaintiffs who aren't yet official parties to the case is premature.

Personal jurisdiction requires a claim-by-claim analysis. *Turner v. Regions Bank*, 770 F.Supp.2d 1244, 1248 (M.D. Ala. 2011) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)). The cases cited by Perdue also agree with this notion. *See Vallone v. CJS Solutions Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) ("Personal jurisdiction must be determined on a claim-by-claim basis."). That is why courts cannot base "jurisdiction on hypotheticals." *General Pump & Well, Inc. v. Martix Drilling Prods.*

6

*Co.*, No. CV608-045, 2009 WL 812340, at * 3 n.4 (S.D. Ga. Mar. 26, 2009) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). Instead, courts must review each claim by each party to determine if general or specific jurisdiction exists. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 372 (3rd Cir. 2022) ("[P]otential plaintiffs must still demonstrate personal jurisdiction over the defendant with respect to their own claims.").

For that reason, the cases cited by Perdue were all at a different procedural posture. Namely, the courts were reviewing class certification or potential plaintiffs already trying to opt into the action, requiring the court to review each's assertion of jurisdiction. *See Vallone*, 9 F.4th at 864;[2] *Fischer*, 42 F.4th at 370 ("Two out-of-state former FedEx employees . . . submitted notices of consent."); *Canaday v. Anthem Co., Inc.*, 9 F.4th 392, 395 (6th Cir. 2021) ("Dozens of nurses opted into the action by filing written consent forms with the federal court.").

Indeed, numerous other courts reached the same conclusion—it is premature to decide personal jurisdiction over putative class members before any such members attempt to join the action. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) ("Absent class certification, putative class members are not parties before a court, rendering the defendant's motion premature."); *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020) (holding that unnamed class members didn't need to

---

[2] *See also* Memorandum and Order, *Vallone v. CJS Solutions Grp., LLC*, No. 0:19-CV-1532 (D. Minn. Feb. 5, 2020), ECF No. 49 ("[E]ight additional individuals have already filed consents to participate in the collective action.").

demonstrate personal jurisdiction); *King v. Wise Staffing Svcs., Inc.*, No. 2:18-cv-01731-RDP, 2020 WL 5110758, at *7 n.4 (N.D. Ala. Aug. 31, 2020) ("The court . . . does not base its rulings on anticipated conduct.").

Even Perdue's primary case—*Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017)—recognized the individualized nature of specific jurisdiction. There, more than 600 plaintiffs sued in California state court. But most of the plaintiffs were not residents of California. In order to determine whether jurisdiction was proper, the United States Supreme Court held that the court should have determined if there was specific jurisdiction between each plaintiff's claim and the forum state, meaning the claim needed to have arisen out of the defendant's conduct in or related to the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). Such a determination necessarily requires an individualized analysis of each potential claim.

Perdue also contends that the Court lacks jurisdiction because of a forum selection clause contained in each PPA that requires growers to bring suit "in the state or federal courts of the United States located in the county in which the farm is located." [Doc. 23-1, p. 12]. Even though Plaintiff acknowledges that all growers sign a similar, if not the same, version of the PPA, it is not possible to know, for purposes of this motion, that each PPA contains the exact same forum-selection clause without inspecting each particular one. [Doc. 1, ¶ 27]. Even so, the proper enforcement of a forum-selection

clause is a motion to transfer to the proper district or state court via 28 U.S.C. § 1404(a), not a motion to dismiss. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013); *see also Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998). If and when there are opt-in plaintiffs, the Court will cross that procedural bridge.

### b. <u>Agriculture Exemption</u>

Perdue next argues that even if Plaintiff was misclassified, he falls under the "agriculture exemption" of the FLSA. [Doc. 15-1, p. 14 (referencing 29 U.S.C. § 213(b)(12))]. Perdue is correct that poultry farming generally falls within this exemption. *See* 29 U.S.C. § 203(f); *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 399 (1996). However, Plaintiff is correct that FLSA exemptions are fact specific, and under the facts alleged in his Complaint that the Court must accept as true, Perdue's arguments are "premature at the motion to dismiss stage." *Cartwright v. M2R, Inc.*, No. 5:14-cv-02213-SGC, 2016 WL 3181402, at *1 (N.D. Ala. June 8, 2016).

The ultimate burden of proving an employee is exempt rests on the employer. *See Pioch v. IBEX Eng'g Svcs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016). That burden is carried by a fact-intensive inquiry that can only be handled at the motion to dismiss stage in limited circumstances. Indeed, the application of the agriculture exemption involves "facts not apparent from the fact of the [c]omplaint." *Herman v. Cont'l Grain Co.*, 80 F.Supp.2d 1290, 1293 (M.D. Ala. 2000); *see also Naftel v. Toucan Cap. Fund II, LP*,

No. 1:09-cv-1066-BBM, 2009 WL 10668454, at *7 (N.D. Ga. Dec. 3, 2009) (collecting cases denying motions to dismiss based on FLSA exemptions as premature). This case doesn't fit in the category that Perdue urges. Instead, the Court will simply need more facts in order to answer that question.

First, the parties disagree over which exemption possibly applies to this case. *Compare* [Doc. 1, ¶ 123 (arguing that 29 U.S.C. § 213(b)(13) applies)], *with* [Doc. 15-1, p. 15 (arguing that 29 U.S.C. § 213(b)(12) applies)]. Second, Plaintiff argues that even if Perdue's preferred exemption does apply, Plaintiff was involved in both exempt and non-exempt work, such that the exemption wouldn't cover him. *See* 29 C.F.R. 780.11. Therefore, the question of the applicability of the exemption is not ripe for review at this stage.

Accordingly, the Court **DENIES** Perdue's Motion as it relates to Plaintiff's FLSA claims.

## II.    <u>State-Law Claims</u>

### a.    <u>Fed. R. Civ. P. 9(b)</u>

Perdue argues that Plaintiff fails to satisfy the heightened pleading standard required under Fed. R. Civ. P. 9(b) for both negligent misrepresentation and fraud. [Doc. 15-1, p. 27]. "When alleging fraud or mistake, a plaintiff must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place, and substance of

the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006).

"The 'particularity' requirement 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. Appx. 81, 86 (11th Cir. 2008) (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "[F]air notice is perhaps the most basic consideration underlying Rule 9(b)," *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).

### 1.   <u>Negligent Misrepresentation</u>

First, for negligent misrepresentation, courts are split on applying the heightened pleading standards of Fed. R. Civ. P. 9(b) to such claims. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1177 (N.D. Ga. 2019) ("[T]he heightened pleading standards of Rule 9(b) do not apply to claims of negligent misrepresentation."); *Higgins v. Bank of Am., N.A.*, No. 1:15-cv-01119-ELR-JFK, 2015 WL 12086083, at *4 (N.D. Ga. Sept. 22, 2015); *Kingdom Ins. Grp., LLC v. Cutler & Assoc., Inc.*, No. 7:10-cv-85(HL), 2011 WL 2144791, at *5 (M.D. Ga. May 31, 2011); *Meredian Holdings Grp., Inc. v. Pereira*, No. 1:16-cv-124(WLS), 2018 WL 11431527, at *9 (M.D. Ga. May 23, 2018).

This discrepancy arises from the underlying question of whether, under Georgia law, negligent misrepresentation sounds in tort or fraud. Clearly, if it sounds in fraud, then Plaintiff must satisfy the heightened pleading standards. *See United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1305 (11th Cir. 2002). However, under Georgia law, negligent misrepresentation sounds in tort. *See Baker v. GOSI Enters., Ltd.*, 830 S.E.2d 765, 769 (Ga. Ct. App. 2019). Therefore, Rule 9(b)'s heightened pleading standards do not apply to negligent misrepresentation arising under Georgia tort law. *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1340 (N.D. Ga. 2021). Accordingly, the Court need not evaluate Plaintiff's negligent misrepresentation claim under Rule 9(b)'s pleading standard.

### 2.   <u>Fraud</u>

Unlike Plaintiff's negligent misrepresentation claim, his fraud claim does fall under Rule 9(b)'s requirement. In explaining the specifics of the rule, the Eleventh Circuit stated:

> Rule 9(b) may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'

*Brooks*, 116 F.3d at 1370-71.

In reviewing Plaintiff's fraud claim, he alleges that Perdue's language in the PPA

"represented to Parker and class members that growers would perform work 'using the skills, knowledge, and discretion' that each grower 'possesses.'" [Doc. 1, ¶ 142]. Further, Plaintiff alleges that Perdue represented that he and the class members would be "treated as independent contractors." [*Id.* at ¶ 143]. Additionally, Plaintiff contends that Perdue "deliberately withheld . . . information with the intent to deceive [Plaintiff] and class members[.]" [*Id.* at ¶ 148]. Reliance on these representations then led Plaintiff to decide to agree to the PPA. [*Id.* at ¶ 149]. In the end, Plaintiff alleges that Perdue's representations resulted in him making "significant payments" and incurring "financial obligations in order to make improvements to Perdue's specifications, purchase equipment required by Perdue, [etc.]." [*Id.* at ¶ 93]. All the while, Plaintiff alleges that Perdue profited off the misclassification of Plaintiff and other growers and got the benefit of the improvements each grower made at their own expense. [*Id.* at ¶ 18].

Taking those allegations as true, Plaintiff meets most of the *Brooks* factors. He (1) outlines *some* the statements (and omissions) in the PPA that he alleges were fraudulent,[3] (2) alleges that Perdue drafted the PPA and was responsible for its language, and (3) contends that Perdue profited from the alleged fraud and—in turn— sufficiently alleges that Perdue's misrepresentations and material nondisclosures proximately resulted in his damages.

However, Plaintiff does not allege exactly who he discussed the PPA with, and

---

[3] However, Plaintiff does not cite specifically to those provisions.

which—if any—of these representations were made by that individual. Instead, Plaintiff rests solely on the existence of the PPA. However, if Plaintiff contends that Perdue's employees made these representations (or omissions), he needs to allege facts sufficient to support those allegations. Further, Plaintiff's Complaint fails to outline exactly how and when he and Perdue executed the PPA(s). Indeed, Plaintiff broadly references the PPA's language, but does not cite to specific portions which he alleges is fraudulent. Plaintiff's general and generic allegations do not—as they stand—meet the required pleading standards of Rule 9(b).

Accordingly, the Court **GRANTS** Perdue's Motion as it relates to Plaintiff's fraud claim (count 5). However, that does not end Plaintiff's fraud claim. When a plaintiff makes "conclusory allegations of fraud . . . [he] is entitled to one chance to amend the complaint and bring it in compliance with Rule 9(b)." *Cooper v. Blue Cross Blue Shield of Fla., Inc.*, 19 F.3d 562, 568–69 (11th Cir. 1994); *Clausen*, 290 F.3d at 1308 ("[T]he plaintiff was entitled to one chance to amend the complaint and bring it into compliance with the rule.") (internal quotations omitted). Therefore, Plaintiff's fraud claim is **DISMISSED without prejudice**, but that dismissal is accompanied with the Court's leave to amend the deficient pleading consistent with the Court's discussion above. *See VC Macon, GA LLC v. Va. Coll. LLC*, No. 5:18-cv-00388-TES, 2020 WL 5079165, at *7 (M.D. Ga. Aug. 27, 2020).

b.   __Standing__

Perdue also asks the Court to dismiss Plaintiff's state-law claims to the extent "he seeks to assert claims on behalf of growers in states other than Georgia for the simple reason that he lacks standing to assert them." [Doc. 15-1, p. 20]. Similar to Defendants FLSA collective action arguments, the state-law standing arguments are also premature. Class certification has not occurred in this case. Before class certification, the only question is whether "at least one named class representative has [standing]."[4] *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). To be sure, Plaintiff correctly asserts that all of Perdue's cited cases sat at a later procedural posture—namely, class certification. *See, e.g., Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262 (11th Cir. 2001); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000). We are not there yet.

Even more, "whether a class members' claims fall under another state's laws is a Rule 23 matter and not a standing issue." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 21-10335, 2022 WL 16729170, at *5 (11th Cir. Nov. 7, 2022). To be sure, "all circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III." *Id.* at *6. While Perdue is correct that at least one member of the class must have standing over each subclaim, Plaintiff's Complaint

---

[4] Perdue does not dispute that Plaintiff has standing to bring his state law claims on his own behalf. *See* [Doc. 15-1].

meets that standard at this stage. *See Prado*, 221 F.3d at 1279.

Accordingly, Perdue's arguments are premature, and the Court **DENIES** Perdue's Motion as it relates to standing for Plaintiff's state-law claims.

### III.   Packers & Stockyards Act

Plaintiff concedes that current Eleventh Circuit precedent precludes his Packers & Stockyards Act, 7 U.S.C. § 192, claim because he fails to allege harm to competition. [Doc. 18, p. 35]; *see also Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272 (11th Cir. 2005); *London v. Fieldale Farms Corp.*, 410 F.3d 1295 (11th Cir. 2005). Aside from this concession, Plaintiff's only substantive argument is that the Eleventh Circuit's cases "misinterpret the statute," by reading additional requirements into the text. [Doc. 18, p. 35]. As Plaintiff acknowledges, the Court is bound by the Eleventh Circuit decisions. According to that precedent, he needed to allege the requisite relevant product market, geographic market, and Perdue's market power to create the basis for an alleged harm to competition. [Doc. 15-1, pp. 22–27]; *Pickett*, 420 F.3d at 1279. Plaintiff's Complaint fails to do that. Plaintiff's arguments are—as he recognizes—better suited for review by the Eleventh Circuit. Therefore, based on binding precedent, the Court **GRANTS in part** Perdue's Motion and **DISMISSES** Plaintiff's § 192 claim.

### CONCLUSION

Based upon the foregoing, the Court **GRANTS in part** and **DENIES in part** Perdue's Partial Motion to Dismiss [Doc. 15]. Accordingly, the Court **GRANTS**

Perdue's Motion as it relates to Plaintiff's state-law fraud claim (count 5)[5] and his

Packers & Stockyards Act claim (Count 8). Thus, the Court **DISMISSES** those claims.

The Court **DENIES** Perdue's Motion as to Plaintiff's other claims.

      **SO ORDERED**, this 8th day of December, 2022.

                          S/ Tilman E. Self, III

                          **TILMAN E. SELF, III, JUDGE**
                          **UNITED STATES DISTRICT COURT**

---

[5] Again, Plaintiff may, if he chooses, amend his Complaint to attempt to bring his fraud claim into compliance under Rule 9(b).