**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**

**ROGER PARKER, on his own behalf and on behalf of all others similarly situated,**

*Plaintiff,*

**v.**

**PERDUE FARMS, INC. and PERDUE FOODS, LLC,**

*Defendant.*

Case No. 5:22-cv-00268-TES

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

FACTUAL BACKGROUND .......................................................................................................3

I.    COLLECTIVE MEMBERS ARE SUBJECT TO UNIFORM POLICIES AND
      PRACTICES .....................................................................................................................3

II.   THROUGHOUT THE RELEVANT TIME PERIOD, GROWERS WERE
      SYSTEMATICALLY PAID LESS THAN THE FEDERAL MINIMUM WAGE ...........6

LEGAL STANDARD..................................................................................................................7

ARGUMENT .............................................................................................................................10

I.    PLAINTIFFS' PROPOSED FLSA COLLECTIVE SHOULD BE
      CONDITIONALLY CERTIFIED ...................................................................................10

      A.    The Complaint, Plaintiffs' Declarations, and the Evidence Disclosed by Perdue
            in the Limited Discovery Taken thus Far Demonstrate that Growers
            in the Proposed Collective Are Similarly Situated. ............................................... 10

      B.    Parker Has Satisfied his Burden of Proving That Other Growers Desire to Opt
            Into This Action ................................................................................................... 13

II.   PLAINTIFFS' NOTICE PLAN SHOULD BE APPROVED ...........................................15

CONCLUSION..........................................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Aiuto v. Publix Super Mkts., Inc.*,
  19-cv-4803, 2020 WL 2039946 (N.D. Ga. Apr. 9, 2020) ........................ 8

*Albert v. HGS Colibrium*,
  No. 16-cv-3072, 2017 WL 1682528 (N.D. Ga. May 3, 2017)................. 14

*Brown v. 1888 Mills, LLC*,
  339 F.R.D. 692 (N.D. Ga. 2021)........................................................... 10

*Brown v. Energy Servs. Grp. Int'l, Inc.*,
  No. 21-cv-611, 2021 WL 5889707 (E.D. Va. Dec. 13, 2021)................ 17

*Butler v. DirectSAT*,
  876 F. Supp. 2d 560 (D. Md. 2012)........................................................ 17

*Calderone v. Scott*,
  838 F.3d 1101 (11th Cir. 2016) ............................................................. 11

*Cameron-Grant v. Maxim Healthcare Servs., Inc.*,
  347 F.3d 1240 (11th Cir. 2003) ............................................................... 8

*Chapman v. Saber Healthcare Group, LLC*,
  No. 2:20cv106, 2022 WL 3686477 (E.D. Va. Aug. 25, 2022)............... 17

*Ciani v. Talk of the Town Rests., Inc.*,
  No. 14-cv-2197, 2015 WL 226013 (M.D. Fla. Jan. 16, 2015) ............... 14

*Collado v. J. & G. Transp., Inc.*,
  No. 14-cv-80467, 2014 WL 5390569 (S.D. Fla. Oct. 23, 2014) ............ 18

*Curtis v. Scholarship Storage Inc*.,
  No. 14-cv-303, 2015 WL 1241365 (D. Me. March 18, 2015)................ 16

*Eyo v. Ace High Mktg., LLC*,
  No. 20-cv-1018, 2020 WL 8224928 (N.D. Ga. Nov. 23, 2020)............... 8

*Gagliastre v. Captain George's Seafood Rest.*,
  No. 17-cv-379, 2018 WL 9848232 (E.D. Va. Mar. 13, 2018)................ 16

*Gouldie v. Trace Staffing Sols., LLC.*,
  No. 21-cv-00088, 2021 WL 4944800 (M.D. Ga. Oct. 22, 2021) ............. 7

*Guerra v. Big Johnson Concert Pumping, Inc.*,
   No. 05-cv-14237, 2006 WL 2290512 (S.D. Fla. May 17, 2006)............................................. 13

*Hansen v. Waste Pro of S.C., Inc.*,
   No. 17-cv-02654, 2020 WL 1892243 (D.S.C. Apr. 16, 2020) .................................................. 18

*Haynes v. Willie Lamar Block & Brick Constr.*,
   No. 17-cv-00442, 2018 WL 6521476 (M.D. Ga. Oct. 24, 2018) .......................................... 2, 7

*Hernandez v. NGM Mgmt. Grp. LLC*,
   No. 12-cv-7795, 2013 WL 5303766 (S.D.N.Y. Sept. 20, 2013) ............................................. 16

*Hipp v. Liberty Nat'l Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) ........................................................................................ 8, 9, 10

*Hoffman-LaRoche v. Sperling*,
   493 U.S. 165 (1989)................................................................................................................. 15

*Ingram v. Passmore*,
   No. 14-cv-00004, 2014 WL 12776734 (N.D. Ala. June 10, 2014) .......................................... 16

*Kelly v. Bank of Am. N.A.*,
   No. 10-cv-5332, 2011 WL 7718421 (N.D. Ill. Sept. 23, 2011)................................................ 17

*Kesley v. Entm't U.S.A. Inc.*,
   67 F. Supp. 3d 1061 (D. Ariz. 2014) ...................................................................................... 17

*Kirk v. Dr. Goodroof, Inc.*,
   No. 14-cv-639, 2015 WL 1138445 (M.D. Fla. Mar. 13, 2015) ............................................... 13

*Lupardus v. Elk Energy Servs.*, LLC,
   No. 19-cv-00529, 2020 WL 4342221 (S.D. W.Va. July 28, 2020) ......................................... 18

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin.,
   Wage & Hour Div.*,
   679 F.2d 1350 (11th Cir. 1982) .............................................................................................. 14

*Mainor v. Lazer Spot, Inc.*,
   No. 11-cv-971, 2011 U.S. Dist. LEXIS 151990 (N.D. Ga. Aug. 9, 2011) ................................ 9

*Mooney v. Aramco Servs. Co.*,
   54 F.3d 1207 (5th Cir. 1995) .................................................................................................... 9

*Morgan v. Family Dollar Stores, Inc.*,
   551 F.3d 1233 (11th Cir. 2008) ........................................................................................... 8, 15

*Morris v. Lettire Constr., Corp.*,
    896 F. Supp. 2d 265 (S.D.N.Y. 2012) ................................................................. 18

*Parker v. K&L Ent., Inc.*,
    No. 20-cv-217, 2020 WL 7491077 (E.D.N.C. Dec. 21, 2020) .............................. 11

*Pippins v. KPMG*,
    No. 11-cv-0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ................................... 17

*Poreda v. Boise Cascade, L.L.C.*,
    532 F. Supp. 2d 234 (D. Mass. 2008) ................................................................. 16

*Prescott v. Prudential Ins. Co.*,
    729 F. Supp. 2d 357 (D. Me. 2010) ..................................................................... 16

*Reece v. United Home Care of N. Atlanta, Inc.*,
    No. 12-cv-2070, 2013 WL 895088 (N.D. Ga. Mar. 8, 2013) ................................. 8

*Rehberg v. Flowers Foods, Inc.*,
    No. 12-cv-596, 2013 WL 1190290 (W.D.N.C. Mar. 22, 2013) ............................. 17

*Reyes v. AT&T Corp.*,
    801 F. Supp. 2d 1350 (S.D. Fla. 2011) .................................................................. 8

*Reyes v. Carnival Corp.*,
    No. 04-cv-21861, 2005 WL 4891058 (S.D. Fla. May 25, 2005)............................ 13

*Sanchez v. Sephora USA, Inc.*,
    No. 11-cv-03396, 2012 WL 2945753 (N.D. Cal. July 18, 2012) ........................... 18

*Scott v. Heartland Home Fin., Inc.*,
    No. 05-cv-2812, 2006 WL 1209813 (N.D. Ga. May 3, 2006)................... 10, 13, 14

*Sellers v. Keller Unlimited LLC*,
    386 F. Supp. 3d 631 (D.S.C. 2019)........................................................................ 9

*Thomas v. Maximus, Inc.*,
    No. 21-cv-498, 2022 WL 1482010 (E.D. Va. May 10, 2022) ..................... 16, 17, 18

*Tomkins v. Amedisys, Inc.*,
    No. 12-cv-1082, 2014 WL 129407 (D. Conn. Jan. 13, 2014) .............................. 16

*Troxel v. Gunite Pros, LLC*,
    No. 21-cv-0057, 2022 WL 37525 (S.D. Ala. Jan. 4, 2022) .................................. 18

*Weinstein v. 440 Corp.*,
   19-cv-105, 2019 WL 5704137 (N.D. Ga. Nov. 4, 2019) ........................................ 8

*Woods v. Vector Mktg. Corp.*,
   No. 14-cv-0264, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015) ............................ 17

*Wright v. Waste Pro United States*,
   No. 19-cv-62051, 2020 WL 8641581 (S.D. Fla. Dec. 22, 2020) ........................... 16

*Wynder v. Applied Card Systems, Inc.*,
   No. 09-cv80004, 2009 WL 3255585 (S.D. Fla. Oct.7, 2009) ................................ 13

**Statutes**

29 U.S.C. § 216(b) ........................................................................................................ 7

## INTRODUCTION

On August 22, 2022, Plaintiff Roger Parker ("Plaintiff," and along with opt-in Plaintiff Barbara Tripp, "Plaintiffs")), on behalf of himself and all others similarly situated, filed his Complaint against Perdue Foods, LLC ("Defendant" or "Perdue") seeking, *inter alia*, all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219. Plaintiff alleges that Perdue violated the FLSA by controlling the time, manner, and method of his work as though he was an employee but failing to pay him and Perdue's other chicken growers at least the federal minimum wage of $7.25 per hour of work, both in its failure to pay the statutory minimum and due to improper deductions Perdue made from growers' pay.

Pursuant to Section 216(b) of the FLSA, Plaintiffs now request that the Court conditionally certify the following Proposed Collective[1]:

> All individuals who currently or formerly grew chickens for Perdue under a Perdue Poultry Producer Agreement from [insert date three years prior to the date that the Court issues an Order granting Conditional Certification] and the present (the "FLSA Collective")

Plaintiffs further request that the Court permit notification to potential class members of the existence of this lawsuit, thereby providing the potential class members with the opportunity to opt-in to this litigation. A copy of the proposed Notice and Opt-In form are attached hereto as Exhibits 1 and 2 respectively.

As explained below, in deciding whether to conditionally certify the Proposed Collective the Court must make two determinations. *First*, the Court must determine whether the members of the Proposed Collective are "similarly situated." In making this determination, the Court should

---

[1] Perdue also operates under the names Draper Valley Farms in Washington and Petaluma Poultry in California. The proposed collective does not include growers subject to the Draper Valley Farms Broiler Growing Agreement or the Petaluma Broiler Growing Agreement. Throughout this Motion, "Perdue growers" will refer only to growers subject to the Perdue Poultry Producer Agreement.

apply a lenient standard given the nascent posture of this litigation. Here, the determination is simple. The members of the Proposed Collective all signed the same Poultry Producer Agreement authored and enforced by Perdue, and all were subject to either identical or substantially similar guidelines and supervision. Perdue controlled all members of the Proposed Collective in the same way, and it paid them all in the same manner, including by inappropriately deducting from their pay expenses that Perdue required these employees to incur for Perdue's sole benefit. Plaintiffs have also proven that, if notice were to be sent to the Proposed Collective, other growers would desire to join this suit—even before such notice issued, a Perdue grower, Barbara Tripp, filed an opt-in consent form, ECF 49, which this Court has recognized is the best evidence of desire to join. *E.g.*, *Haynes v. Willie Lamar Block & Brick Constr.*, No. 17-cv-00442, 2018 WL 6521476, at *3 (M.D. Ga. Oct. 24, 2018) (Self, J.). The Proposed Collective should thus be conditionally certified. *See infra* Section I.

*Second*, the Court must then determine whether notice is appropriate. Here, no individualized inquiry at this stage is required into the circumstances unique to any individual members of the Proposed Collective—the relevant facts are dictated by Perdue's contracts and policy documents, which were materially uniform for all Perdue growers. Further, Plaintiffs' Proposed Notice and Opt-In form meet the requirements of timeliness, accuracy, and being informative of nature. *See infra* Section II. Thus, Plaintiffs' Motion to Facilitate Notice pursuant to 29 U.S.C. § 216(b) ("Notice Motion") should be granted and the Court should (1) order Perdue to produce a list of individuals in the collective, and (2) authorize the attached Notice and opt-in forms to be distributed to the potential collective members as soon as practicable.

## FACTUAL BACKGROUND

### I.    COLLECTIVE MEMBERS ARE SUBJECT TO UNIFORM POLICIES AND PRACTICES

Perdue is the third largest broiler chicken company in the country. Complaint, ECF 1, ¶ 14 ("Compl."). Perdue contracts with approximately 1,300 growers,[2] all of whom it makes sign the same contract. Compl. ¶ 27; Ex. 3, 30(b)(6) Depo., 19:8-11.

Plaintiff Parker worked for Perdue as a grower in Georgia from approximately December 2016 through September 2019. On December 16, 2016, Mr. Parker executed the most recent iteration of Perdue's Poultry Producer Agreement, pursuant to which he grew chickens for the remainder of his time growing for Perdue. *See generally* Ex. 4, Declaration of Named Plaintiff Roger Parker.

On July 24, 2023, Opt-in Plaintiff Barbara Tripp filed her Opt-in Consent Form. ECF 49. Ms. Tripp worked for Perdue as a grower in North Carolina for approximately 30 years, ending in August 2021. Despite Ms. Tripp working as a grower in a different state from Parker, the Poultry Producer Agreement Ms. Tripp signed is substantively identical to the Poultry Producer Agreement signed by Parker. Ex. 5, Declaration of Opt-In Plaintiff Barbara Tripp, at ¶ 2. Indeed, *all* 1,300 Perdue growers have signed and grown pursuant to the same Poultry Producer Agreement since June 2016. Ex. 3, 30(b)(6) Depo., 20:17-21; 21:15-19; 26:9-12 ("Q. . . . Are there any earlier agreements pre-2016 that would have still been enforced in 2019? A. No. This is the new agreement."); 27:3-6 (Q: Got it. So large broilers, small broilers, they're all under that agreement, plus the attachment? A. All 1300 farmers are under this agreement.").

---

[2] This number does not include approximately twenty Draper Valley growers, Ex. 3, 30(b)(6) Depo., 17:6-8, and approximately three Petaluma Poultry growers, *id.* at 19:5-7, who grow chickens for Perdue on the west coast. Perdue's corporate representative testified that the company's other 1,300 growers are all in states on the east coast, meaning east of the Mississippi River. *Id.* at 16:22-17:2.

3

The Poultry Producer Agreement imposes many uniform obligations on the Proposed Collective.  The Poultry Producer Agreement requires that all Perdue growers ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████ Ex. 6, Poultry Producer Agreement, at Perdue_001628-29.  The Poultry Producer Agreement further requires that all Perdue growers to ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████ *Id.* at Perdue_001628.

The Poultry Producer Agreement also requires growers to ████████████████ ███████████████████████████████████████ and to ████████████████ ████████████████████████████ (collectively, "Grower Guidelines").  *Id.* at 3; *see also* Compl. ¶¶ 30, 38.  These Grower Guidelines, which comprise several documents, *see, e.g.,* Ex. 7, Perdue Poultry Care Process Verified Program ("PVP") Manual,[3] provide detailed and

---

[3] Perdue produced an additional version of this document that applies to all of its plants and all of its broiler growers.  *See* Ex. 8, Poultry Care Process Verified Program, at Perdue_03458 (cover page listing 11 facilities in 9 states); *see also* Ex. 3, 30(b)(6) Depo., 49:19-24 ("Q. And does the PVP apply to all the growers that feed into these harvest plants? A. Yes. Q. And are these all of the harvest plants that Perdue maintains? A. For broilers, yes.").  While specific guidelines are sometimes adjusted, Ex. 3, 30(b)(6) Depo., at 47:8-49:9, a version of this document with similar guidelines applicable to growers has been in place since 2011, *id.*, at 47:21-23.

mandatory instructions regarding the execution of growers' duties, many of which are (at best) only tangentially related to poultry welfare or bio-security and instead function as means of controlling the growers' work.

The Grower Guidelines dictate, among many other things:

- the exact temperature at which the grow out houses should be kept, including specific humidity and ammonia levels all of which change throughout the day, Compl. ¶ 48; Ex. 3, 30(b)(6) Depo. 173:21-174:2;

- specific methods of operating fans and ventilation, Compl. ¶ 48; Ex. 7, Perdue PVP Management Guidelines, at Parker_000025;

- specific heights for water drinkers, Compl. ¶ 48; Ex. 7, Perdue PVP Management Guidelines, at Parker_000032-35;

- specific hours for operation of lighting, Compl. ¶ 48; Ex. 7, Perdue PVP Management Guidelines, at Parker_000026;

- the schedule for cutting grass *outside* the barn, Compl. ¶ 48; Ex. 7, Perdue PVP Management Guidelines, at Parker_000031;

- specific methods for euthanizing chickens and timelines for identifying and removing dead chickens, Compl. ¶ 49; Ex. 7, Perdue PVP Management Guidelines, at Parker_000048, 000055; Ex. 4, Parker Decl. ¶ 4; Ex. 5, Tripp Decl. ¶ 4;

- and who can visit growers' land, Compl. ¶ 50; Ex. 7, Perdue PVP Management Guidelines, at Parker_000018, Ex. 3, 30(b)(6) Depo. 172:4-176:17.

Perdue also dictates numerous, detailed upgrades growers need to make to the farm, even going so far as to mandate specific models or brands of equipment. Compl. ¶ 60; Ex. 3, 30(b)(6) Depo. 104:3-6.

Perdue also assigns each grower a supervisor, often called "Flock Advisors," "Growout Managers," or "Live Production Managers." Compl. ¶ 43. Growers are required to report any issues with chickens to their supervisor within 24 hours and to produce records to their supervisor on demand. *Id.* While Perdue refers to these supervisors as "Advisors" in the Poultry Producer Agreement, Ex. 5, at Perdue_001628, in job listings for the position Perdue states that the role entails "overseeing the people, poultry and daily operations on his/her route," "work[ing] with new

prospects and existing growers to add the square footage needed to meet the needs of the complex," and "[f]acilitat[ing] the construction of square footage by evaluating new sites, introducing prospects t[o] lenders, working with builders and equipment companies to provide quotes to prospects." *Id.* ¶¶ 43–45; *see* Ex. 3, 30(b)(6) Depo. 64:14-65:10 ("A flock advisor's role, they're the liaison to the company for that farmer. . . . Generally, they're scheduled once a week.").

Taken together, Perdue's Poultry Producer Agreement, Grower Guidelines, and the supervisors who ensure growers' compliance afford Perdue near-total control over the grow-out operations of all potential opt-in members of the collective and the work they have to perform on to grow their chickens to Perdue's exacting specifications.

## II.    THROUGHOUT THE RELEVANT TIME PERIOD, GROWERS WERE SYSTEMATICALLY PAID LESS THAN THE FEDERAL MINIMUM WAGE

Despite the control Perdue exercised that made growers employees, Plaintiffs and the other farmers in the proposed collective were not paid an hourly wage. Instead, for Plaintiffs and for all Perdue growers, Perdue determines compensation through a convoluted process known as the "tournament system." Compl. ¶ 87. First, growers are provided a base rate of pay by contract. Compl. ¶ 86. Pursuant to the Poultry Producer Agreement, growers (including Plaintiffs) are then eligible for a performance "bonus." *Id.* ¶ 87. However, these bonuses—purportedly based on performance—create problems all their own. True to its name, the "tournament" system is a competition—that is, any "bonus" paid to certain growers comes at the expense of other, nearby growers whose compensation is reduced by the amount the "winner" is paid. *Id.* ¶ 89. And Perdue controls all inputs that could affect the size each grower's chicks could grow to (*i.e.*, every aspect of the work that might impact the amount of a bonus), including the quality of the chicks themselves, the feed, and antibiotics, as well as dictating all of the conditions the chickens must be kept in, including temperature and light. *Id.* ¶ 88. All Perdue growers are subject to the same

tournament system. *Id.* ¶ 85; Ex. 3, 30(b)(6) Depo. 158:22-24 ("Q. So [the settlement process] applies to all growers? A. Yes."); 160:5-8 ("Q. Recognizing that not all farmers view this as we've just described, the process that it describes applies to all farmers, right? A. Yes. It's how we pay farmers.").

Beyond Perdue's uniform pay policy, Perdue also made deductions from growers' pay, further depressing wages. In order to grow for Perdue, a grower must build expensive "grow out" houses that will hold thousands of chickens. Even if a grower already had such houses—and they were built precisely to Perdue's detailed standards—that grower would then be regularly forced to pay for costly, highly specific facility or equipment changes. *Id.* ¶¶ 24-25. Beyond upgrades, Perdue routinely charged growers the cost of the supplies it mandated that they use. *Id.* ¶ 78.

Perdue's uniform pay policies and deductions, as alleged in the Complaint, caused Plaintiffs and potential opt-in plaintiffs to earn less than the federal minimum wage and overtime requirements. Compl. ¶¶ 109-126.

## LEGAL STANDARD

The FLSA allows a plaintiff alleging a violation of the statute to bring suit on their own behalf or on behalf of other employees who are similarly situated. *See* 29 U.S.C. § 216(b). Pursuant to § 216(b), an employee must give their consent in writing before they can participate in the lawsuit.

The standard for conditional certification is straightforward in the Eleventh Circuit, and requires plaintiffs to make only two showings, both of which are a "minimal burden." *Gouldie v. Trace Staffing Sols., LLC.*, No. 21-cv-00088, 2021 WL 4944800, at *6 (M.D. Ga. Oct. 22, 2021) (Self, J.). The plaintiff must show that the employees in the proposed collective are "(1) are 'similarly situated with respect to their job requirements and with regard to their pay provisions' and (2) desire to join the collective action." *Haynes*, 2018 WL 6521476, at *1 (quoting *Dybach v.*

*Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

"Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001) (per curiam) (describing plaintiff's burden as "fairly lenient" and "flexibl[e]"); *Eyo v. Ace High Mktg., LLC*, No. 20-cv-1018, 2020 WL 8224928, at *4 (N.D. Ga. Nov. 23, 2020); *see Aiuto v. Publix Super Mkts., Inc.*, 19-cv-4803, 2020 WL 2039946, at *6 (N.D. Ga. Apr. 9, 2020) ("[T]he Court is satisfied that Plaintiffs have met the lenient notice-stage requirement of establishing that they are similarly situated,"); *Weinstein v. 440 Corp.*, 19-cv-105, 2019 WL 5704137, at *4 (N.D. Ga. Nov. 4, 2019) ("At this early stage, [Plaintiff] has met her low burden."). The Eleventh Circuit has repeatedly noted that the standard is "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

A plaintiff's burden to demonstrate that the other employees in a proposed collective are similarly situated is minimal. "At the notice stage, . . . the Court need not engage in credibility determinations; instead the Court must determine only whether Plaintiff has presented sufficient — not factually correct — evidence that the putative class members and Plaintiff are 'similarly situated.'" *Reece v. United Home Care of N. Atlanta, Inc.*, No. 12-cv-2070, 2013 WL 895088, at *2 (N.D. Ga. Mar. 8, 2013) (quoting *Bennett v. Advanced Cable Contractors, Inc.*, No. 12-cv-1115, 2012 WL 1600443, at *14 (N.D. Ga. May 7, 2012)); *see Reyes v. AT&T Corp.*, 801 F. Supp. 2d 1350, 1360 (S.D. Fla. 2011) ("[W]hether the requested class in this case actually includes similarly situated individuals (and thus serves judicial economy) is a question more appropriately

addressed at the decertification stage, when more specific information will be available."); *Mainor v. Lazer Spot, Inc.*, No. 11-cv-971, 2011 U.S. Dist. LEXIS 151990, at *8 (N.D. Ga. Aug. 9, 2011) ("At the notice stage, variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered.").

The Eleventh Circuit recommends that trial courts utilize a two-step approach to determine whether certification is appropriate. *See Hipp*, 252 F.3d at 1218-19. At the first stage, the court makes a preliminary determination whether to conditionally certify the collective based upon the limited record before it—the pleadings and/or affidavits—based on whether the complaint adequately alleges the proposed collective is "similarly situated." *See id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). At the second stage, which usually occurs after discovery is largely completed, the defendant has the opportunity to move to de-certify the collective when "the court has much more information on which to base its decision" and can "make[] a factual determination on the similarly situated question." *Id.* (quoting *Mooney*, 54 F.3d at 1214). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney*, 54 F. 3d at 1214. Because this is a motion for *conditional* certification, only the first stage is applicable here. *Id.*

Putative collective members are "similarly situated" for purposes of § 216(b) if they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Sellers v. Keller Unlimited LLC*, 386 F. Supp. 3d 631, 633 (D.S.C. 2019) (citations omitted). "At the notice stage, however, it is not appropriate for the Court to address the merits of the Plaintiffs' claims or weigh the evidence. Accordingly, variations in specific duties,

job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage." *Scott v. Heartland Home Fin., Inc.*, No. 05-cv-2812, 2006 WL 1209813, at \*3 (N.D. Ga. May 3, 2006) (citations omitted).

As noted by district courts in this circuit, "[w]hile the Eleventh Circuit has largely focused its analysis on the similarities of plaintiffs' job requirements and pay provisions, district courts within this circuit have held that 'plaintiffs can [also] meet the burden of showing members of a class are similarly situated by making a modest factual showing . . . that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Brown v. 1888 Mills, LLC*, 339 F.R.D. 692, 698 (N.D. Ga. 2021) (citing *Dybach*, 942 F.2d at 1567-68, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999)).

## ARGUMENT

### I. PLAINTIFFS' PROPOSED FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED

With respect to both elements applicable at this stage, Parker has more than met his "fairly lenient burden" on the minimal evidence available. *Hipp*, 252 F.3d at 1218. Parker's Complaint, his and Opt-in Plaintiff Barbara Tripp's declarations, Perdue's own testimony from the limited 30(b)(6) deposition, and the copies of the contracts and work requirements Perdue imposed on growers all demonstrate that Perdue growers are "similarly situated." Moreover, Plaintiffs have satisfied the second element required for conditional certification—the opt-in consent filed by Ms. Tripp, a similarly situated grower, indicates that other growers desire to join this suit and would join if given notice.

#### A. The Complaint, Plaintiffs' Declarations, and the Evidence Disclosed by Perdue in the Limited Discovery Taken thus Far Demonstrate that Growers in the Proposed Collective Are Similarly Situated.

Parker's Complaint, his and Ms. Tripp's declarations and deposition testimony, and the

testimony given by Perdue during its limited 30(b)(6) deposition demonstrate that all growers in the Proposed Collective are "similarly situated."

 As discussed above, in making this determination the Court should apply a lenient standard.  A plaintiff "need show only that their positions are similar, not identical, to the positions held by the putative class members."  *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (quoting *Hipp*, 252 F.3d at 1214, 1217).

As the allegations in the Complaint, Perdue's deposition testimony, and the declarations of named Plaintiff Roger Parker and Opt-in Plaintiff Barbara Tripp make clear, growers were all subject to the same Poultry Producer Agreement terms and binding Grower Guidelines.  Compl. ¶ 27; Ex. 3, 30(b)(6) Depo. 27:3-6 ("Q: Got it.  So large broilers, small broilers, they're all under that agreement, plus the attachment? A. All 1300 farmers are under this agreement."); Ex. 4, Parker Decl. ¶ 2; Ex. 5, Tripp Decl. ¶ 2.  Uniformly, they were required to follow the policies and procedures laid out by Perdue that gave Perdue near total control of how they conducted their work.  Ex. 4, Parker Decl. ¶¶ 4-6; Ex. 5, Tripp Decl. ¶¶ 4-6.  Thus, they were employees.  In addition, both Plaintiffs, and other growers, were not paid the amount by the FLSA's minimum wage and overtime provisions as a result of Perdue's pay policies and deductions made for the expensive upgrades that Perdue required.  Compl. ¶¶ 111-113; Ex. 4, Parker Decl. at ¶¶ 6-7; Ex. 5, Tripp Decl. at ¶¶ 6-7.

Perdue's growers are similarly situated for purposes of the instant motion because of the uniform policies to which they are subject and their compensation.  *See Parker v. K&L Ent., Inc.*, No. 20-cv-217, 2020 WL 7491077, at *2 (E.D.N.C. Dec. 21, 2020) ("Conditional certification and notice to all individuals in the same job category is warranted when employers make across-the-board decisions to treat a category of employees in a manner violative of the FLSA).  According

to Perdue's own testimony, every Perdue grower in the proposed class was subject to the same June 2016 form Poultry Producer Agreement. Ex. 3, 30(b)(6) Depo. 20:17-21, 21:15-19. Perdue's corporate representative testified that no earlier agreement would have still been enforced in 2019, *id.* at 26:9-12, and that all growers with an earlier agreement re-signed the June 2016 Poultry Producer Agreement, *id.* at 26:13-15. To put a fine point on it: Perdue testified that "[a]ll 1300 [current] farmers are under this agreement." *Id.* at 27:3-6.[4] Additionally, it is undisputed that all Perdue growers are subject to the same payment system. Ex. 3, 30(b)(6) Depo. 158:22-24 ("Q. So [the settlement process] applies to all growers? A. Yes."); 160:5-8 ("Q. Recognizing that not all farmers view this as we've just described, the process that it describes applies to all farmers, right? A. Yes. It's how we pay farmers.").

Finally, it is undisputed that all of Perdue's growers are subject to the same guidelines. Perdue requires its growers to comply with a Process Verified Program ("PVP"). *Id.* at 45:21-46:12. The PVP applies to every chicken grower Perdue employs. *See id.* at 49:19-23 ("Q. And does the PVP apply to all the growers that feed into these harvest plants? A. Yes. Q. And are these all of the harvest plants that Perdue maintains? A. Yes."); *id.* at 50:2-8 ("Q. . . . So with chicken or boilers [sic], this is all harvesting plants. So the PVP applies to all broilers? A. Yes. Q. All growers who maintain broilers? A. Yes.").

The Poultry Producer Agreement and the Grower Guidelines Perdue obligates growers to follow are the primary sources of the stringent requirements that are at the heart of this Action.

---

[4] Perdue's corporate representative testified that in 2020 there was a small amendment to the Poultry Producer's Agreement's termination provision for growers that were assigned the Dillon, South Carolina facility and that the same change was made for all other Perdue growers in October 2023. Ex. 3, 30(b)(6) Depo. 188:17-21, 189:2-22. The change affected only Section V.D of the contract and allowed Perdue not to place birds with a farmer during the 90-day termination period when there was an animal welfare issue or where the farmer had threatened a Perdue representative with bodily harm. *Id.* at 188:1-16. Those changes are immaterial to the issues here.

They dictate the schedules of growers, the way the growers maintain their grow-houses, and virtually every aspect of the work growers perform to grow Perdue's chickens.

The uniform applicability of those guidelines to the proposed class is sufficient to meet Plaintiffs' burden to show he is similarly situated to prospective class members. As noted above, "[a]t the notice stage . . . it is not appropriate for the Court to address the merits of the Plaintiffs' claims or weigh the evidence. Accordingly, variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage." *Scott v. Heartland Home Fin., Inc.*, 2006 WL 1209813, at *3.

As such, the Court should hold that, at the conditional certification stage, Plaintiffs have satisfied their burden that they and Perdue's other growers who were underpaid are similarly situated.

### B.    Parker Has Satisfied his Burden of Proving That Other Growers Desire to Opt Into This Action

Courts in the Eleventh Circuit have consistently concluded that one or two opt-in plaintiffs are sufficient to permit conditional certification. *See, e.g.*, *Kirk v. Dr. Goodroof, Inc.*, No. 14-cv-639, 2015 WL 1138445, at *2 (M.D. Fla. Mar. 13, 2015) (conditional certification granted based on affidavit of named plaintiff and one opt-in plaintiff); *Wynder v. Applied Card Systems, Inc.*, No. 09-cv80004, 2009 WL 3255585, at *3 (S.D. Fla. Oct.7, 2009) (conditional certification granted based on affidavit of named plaintiff and one opt-in plaintiff); *Guerra v. Big Johnson Concert Pumping, Inc.*, No. 05-cv-14237, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) ("Here, the affidavit of [the opt-in plaintiff] shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation."); *see also Reyes v. Carnival Corp.*, No. 04-cv-21861, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (two opt-in plaintiffs); *Albert v. HGS Colibrium*, No. 16-cv-3072, 2017 WL 1682528, at *3-*5 (N.D. Ga.

May 3, 2017) (conditional certification granted based on declarations of named plaintiff and two opt-in plaintiffs); *Ciani v. Talk of the Town Rests., Inc.*, No. 14-cv-2197, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015) (same).

Here, Ms. Tripp is a member of the Proposed Collective defined above, and she has properly opted into this action. ECF 49. She has submitted a declaration and has been deposed in connection with this action. Ms. Tripp is a proper FLSA opt-in plaintiff, because as a Perdue grower subjected to the same pay and supervision policies that Perdue applies to the entire Proposed Collective. She signed the same Poultry Producer Agreement as Parker, which imposed on her the same obligations to grow under Perdue's direction and pursuant to substantively identical Grower Guidelines. Ex. 3, 30(b)(6) Depo., 19:8-11, 27:3-6 (all growers under same agreement and subjected to similar PVP requirements).[5]

Additionally, both Mr. Parker and Ms. Tripp testify that they believe that other growers would be interested in joining the class were the Court to send out Plaintiffs' requested Notice. Ex. 4, Parker Decl., at ¶ 8; Ex. 5, Tripp Decl., at ¶ 8.

---

[5] Although in 2022 Ms. Tripp signed a contract selling her farm to Perdue that contained a purported release of any claims against Perdue, that contract cannot abrogate her right to join an FLSA action, because it was not approved by the Department of Labor or a federal court. *See generally Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982).

Nor does the forum selection clause of Ms. Tripp's Poultry Production Agreement, which purports to require growers to file lawsuits relating to the Agreement in the county in which their farm is located, pose any impediment to conditionally certifying Plaintiffs' Proposed Collective. The forum-selection clause is invalid and unenforceable against Ms. Tripp's opt-in FLSA claim for multiple independent reasons, but what matters for present purposes is that the Court already held that "the proper enforcement of a forum-selection clause is a motion to transfer to the proper district or state court via 28 U.S.C. § 1404(a)," ECF 27, at 8-9 (Order on Motion to Dismiss), which Perdue has not filed. In any event, the "availability of various defenses" is "not considered at [the conditional certification] stage." *Scott v. Heartland Home Fin., Inc.*, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006).

## II.    PLAINTIFFS' NOTICE PLAN SHOULD BE APPROVED

In addition to conditionally certifying the Proposed Collective, the Court should also approve Plaintiff's proposed Notice and Opt-In Consent Form (attached as Exhibits 1 and 2).

To participate in a collective action, "once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008).  In the Eleventh Circuit, when a court follows the recommended two-step approach, the court "should treat the initial decision to certify and the decision to notify potential collective action members as synonymous." *Id.* at 1261 n.40.  The Eleventh Circuit has stated that "[o]ur circuit precedent on notice is, for the purpose of a *Hipp* [two-step] analysis, the same as our law on the question of conditional, and initial, certification." *Id.*  Such notice should be "timely, accurate, and informative." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 172 (1989).

No meaningful individualized inquiry is required here—as discussed above, the Proposed Collective members were all subject to the same Perdue policies.  In addition, Plaintiff's proposed Notice and Opt-In Consent Form meet the criteria for accurate notice that the Supreme Court envisioned in *Hoffman-LaRoche*.  *See* 493 U.S. at 170.  As required, the proposed Notice and Opt-In Consent Forms are "timely, accurate, and informative," and should be approved by the Court. *Id.* at 172.[6]

Within 10 business days after the Court's Order, Perdue should be ordered to produce a list of all members of the above defined Proposed Collective who grew for it in the last three (3) years,

---

[6] To the extent Defendant has specific, meaningful objections to the content of the Notice, Plaintiffs are willing to meet and confer with Defendant no later than 30 days after the Court rules on this motion and report back to the Court if the matter cannot be resolved.

including their names, last-known mailing addresses, last-known telephone numbers, last-known

email addresses, farm locations, and dates during which they grew for Perdue.  Courts routinely

require defendants to produce such information when granting conditional certification motions.

*See id.* at 170 (holding that district courts have the authority to compel the production of contact

information of employees for purposes of facilitating notice in FLSA collective actions).[7]

The Court should allow the Notice to be sent to potential Collective Members by email, as

well as first class mail, and should also allow potential Collective Members to execute their Opt-

In Consent Forms online through an electronic signature service.  *See Thomas v. Maximus, Inc.*,

No. 21-cv-498, 2022 WL 1482010, at *7 (E.D. Va. May 10, 2022) (directing defendant to provide

the names, current or last known physical addresses, dates of employment, phone numbers, and

email addresses for notice); *Wright v. Waste Pro United States*, No. 19-cv-62051, 2020 WL

8641581, at *8 (S.D. Fla. Dec. 22, 2020) (permitting electronic signatures on notice and consent

forms); *Ingram v. Passmore*, No. 14-cv-00004, 2014 WL 12776734, at *4 n.7 (N.D. Ala. June 10,

2014) (same); *Gagliastre v. Captain George's Seafood Rest.*, No. 17-cv-379, 2018 WL 9848232,

at *5 (E.D. Va. Mar. 13, 2018) (same); *Brown v. Energy Servs. Grp. Int'l, Inc.*, No. 21-cv-611,

---

[7] *See also Curtis v. Scholarship Storage Inc.*, No. 14-cv-303, 2015 WL 1241365, at *7 (D. Me. March 18, 2015) (ordering defendant to provide potential plaintiffs' names, addresses, phone numbers, and email addresses); *Tomkins v. Amedisys, Inc.*, No. 12-cv-1082, 2014 WL 129407, at *3 (D. Conn. Jan. 13, 2014) (ordering defendants to provide plaintiffs with each potential plaintiffs' name, last-known address, dates of employment, social security number, and dates of birth, noting "[g]enerally, courts grant this type of request in connection with a conditional certification of a FLSA certification action"); *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-cv-7795, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (ordering defendants to provide names, title, compensation rate, hours worked per week, period of employment, last-known mailing address, alternate addresses, and all known telephone numbers) (collecting cases); *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 371 (D. Me. 2010) (ordering defendants to provide potential plaintiffs' names and current or last known mailing addresses, email addresses, and telephone numbers); *Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 242 (D. Mass. 2008) (same).

2021 WL 5889707, at *3 (E.D. Va. Dec. 13, 2021) (authorizing notice via email, text message and regular mail); *Woods v. Vector Mktg. Corp.*, No. 14-cv-0264, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) (authorizing use of an official case website; online opt-in form submission; email notice; publication on Facebook; and an email or postcard reminder notice); *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061 (D. Ariz. 2014) (authorizing use of an electronic signature service, and reminder notice); *Rehberg v. Flowers Foods, Inc.*, No. 12-cv-596, 2013 WL 1190290, at *3 (W.D.N.C. Mar. 22, 2013) (granting conditional certification and ordering defendant to produce employees "names, last known addresses, dates of employment, job title, respective warehouse, phone numbers, last four digits of their Social Security numbers, and email addresses"); *Pippins v. KPMG*, No. 11-cv-0377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) (ordering notice sent by email and finding that "given the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *Kelly v. Bank of Am. N.A.*, No. 10-cv-5332, 2011 WL 7718421, *1–2 (N.D. Ill. Sept. 23, 2011) (same).

The Court should set a notice period of at least ninety (90) days. Many courts around the country have authorized at least ninety (90) day opt-in periods for collective actions. *See, e.g.*, *Chapman v. Saber Healthcare Group, LLC*, No. 2:20cv106, 2022 WL 3686477, at *10 (E.D. Va. Aug. 25, 2022); *Thomas*, 2022 WL 1482010, at *8; *Butler v. DirectSAT*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 680-69 (E.D. Pa. 2009) (finding a ninety-day opt-in period to be reasonable).

The Court should also authorize Plaintiffs to mail and email a reminder to all potential Collective Members who received the Notice but have not yet responded to opt-in to this matter within forty-five (45) days of the first issuance of the Notice. Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights. *See Troxel v. Gunite*

*Pros, LLC*, No. 21-cv-0057, 2022 WL 37525, at *6 (S.D. Ala. Jan. 4, 2022) ("Where the language in the proposed reminder notice makes clear that it is the individual's choice whether or not to take any action, the Court finds any risk that the reminder might be viewed as judicial endorsement or tacit encouragement to join the lawsuit is so attenuated as to be negligible."); *Collado v. J. & G. Transp., Inc.*, No. 14-cv-80467, 2014 WL 5390569, at *5 (S.D. Fla. Oct. 23, 2014) (permitting a reminder notice to be mailed 14 days prior to the close of the notice period to ensure that putative class members are aware of their rights and the time within which to exercise those rights"); *Thomas*, 2022 WL 1482010, at *8; *Lupardus v. Elk Energy Servs.*, LLC, No. 19-cv-00529, 2020 WL 4342221, at *9 (S.D. W.Va. July 28, 2020) ("Recipients may overlook the initial notifications, even in three forms, or become sidetracked from filing their consent form, but a second round helps to ensure that putative class members receive the notice and are reminded to act should they wish to do so."); *Hansen v. Waste Pro of S.C., Inc.*, No. 17-cv-02654, 2020 WL 1892243, at *7 (D.S.C. Apr. 16, 2020) (allowing reminder notices); *Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); *Sanchez v. Sephora USA, Inc.*, No. 11-cv-03396, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in."). This is particularly appropriate "in an FLSA action since the individual is not part of the class unless he or she opts-in." *Sanchez*, 2012 WL 2945753, at *6 (citing *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010)). Plaintiffs will bear the cost of notice, as well as the reminder mailing, and it will not change the end of the notice period.

## CONCLUSION

For the foregoing reasons, the Court should conditionally certify the Proposed Collective,

grant Plaintiffs' Notice Motion, and allow the attached Notice and opt-in form to issue to all growers in the Proposed Collective, which will allow growers to opt-in to this case if they so desire.

Dated:  December 6, 2023                    Respectfully submitted,

                                            */s/ Jamie Crooks*
                                            Jamie Crooks (admitted *pro hac vice*)
                                            D.C. Bar No. 156005
                                            **FAIRMARK PARTNERS, LLP**
                                            1825 7th St NW, #821
                                            Washington, DC 20001
                                            (617) 721-3587
                                            jamie@fairmarklaw.com


                                            T. Brandon Waddell
                                            Ga. Bar No. 252639
                                            Jarred A. Klorfein
                                            Ga. Bar No. 562965
                                            **CAPLAN COBB LLC**
                                            75 Fourteenth Street, NE, Suite 2700
                                            Atlanta, Georgia 30309
                                            (404) 596-5600
                                            (404) 596-5604 (fax)
                                            bwadell@caplancobb.com
                                            jklorfein@caplancobb.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 6th day of December, 2023.

<div style="margin-left:45%">

*/s/ Jamie Crooks*
Jamie Crooks (admitted *pro hac vice*)
D.C. Bar No. 156005
jamie@fairmarklaw.com

*Counsel for Plaintiff and the Putative Class*

</div>