IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **ROGER PARKER,** *on his own behalf and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**PERDUE FOODS, LLC,**<br><br>*Defendant.* | **CIVIL ACTION NO.**<br>**5:22-cv-00268-TES** |

**ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE**

Plaintiff Roger Parker ("Parker") filed this Fair Labor Standards Act ("FLSA") collective action on June 22, 2022, alleging that Defendant Perdue Foods, LLC ("Perdue"), violated the FLSA. [Doc. 1]. Opt-in Plaintiff Barbara Tripp ("Tripp") joined this action on July 25, 2024, by filing an opt-in consent form. [Doc. 49]. On December 6, 2023, following six months of discovery, Parker and Tripp ("Plaintiffs") filed this Motion seeking conditional certification of this collective action. [Doc. 52]; *see* [Doc. 45, pp. 3–4]. Perdue objects on the grounds that Plaintiffs have failed to demonstrate that other similarly situated employees desire to opt-in to this lawsuit. [Doc. 59, p. 14]. The Court agrees that Plaintiffs have failed to meet their burden and **DENIES** their Motion for Conditional Certification [Doc. 52].

## FACTUAL BACKGROUND

Perdue, "the third largest boiler chicken company in the country," contracts with approximately 1,300 so-called "growers"—farmers who raise chickens for Perdue—nationwide. [Doc. 52-1, p. 9]. Parker worked as one of Perdue's growers in Georgia for several years, "from approximately December 2016 through September 2019." [*Id.*]. During that time, Parker claims that he "often worked over 60 hours per week," "was expected to be on call 24 hours a day," and that, "after paying for expenses, [he] was making a fraction of the" federal minimum wage. [Doc. 1, pp. 26–27, ¶¶ 111, 114, 121].

Parker filed this lawsuit on June 22, 2022, seeking relief under the FLSA related to Perdue's alleged misclassification of Parker and other growers nationwide as independent contractors ("IC"). [*Id.* at p. 1, ¶ 1]; [Doc. 52-1, p. 7]. Parker claims that Perdue's extensive control over its growers makes them de jure employees rather than ICs. [Doc. 52-1, pp. 7, 9–12]. Therefore, Parker argues, growers are entitled to at least the federal minimum wage and overtime pay, which Perdue does not pay them. [*Id.* at p. 13].

The Parties agreed to and "engaged in six months of targeted discovery on conditional certification issues, including extensive written discovery, a 30(b)(6) deposition, and depositions" of Parker and the only opt-in plaintiff, Barbara Tripp. [Doc. 59, p. 5]; *see* [Doc. 49].

## **LEGAL STANDARD**

An "employee" affected by an employer's FLSA violations may use the opt-in mechanism provided in § 216 of the FLSA to bring an action on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). In analyzing collective action cases under § 216(b), the Eleventh Circuit suggests a two-step approach. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001).

First, in the "notice stage, the district court makes a decision—usually based on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Id.* at 1218. At this stage, plaintiffs must show that the individuals in the proposed collective (1) "desire to opt-in" to the collective action and (2) are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991).

A plaintiff must provide a "reasonable basis" for showing that conditional certification should be granted through "detailed" and "substantial allegations." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (citing *Hipp*, 252 F.3d at 1217–19). Unsupported assertions are not enough to clear this hurdle. *See Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983) (affirming the district court's refusal to conditionally certify a class and require notice where the district "judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs" would opt-in).

3

Because the evidence at the notice stage is typically "only the pleadings and any affidavits which have been submitted," the district court's decision whether to create an opt-in class under § 216(b) is normally subject to "a fairly lenient standard." *Hipp*, 252 F.3d at 1219; *see Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995), *overruled on other grounds* by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). As the litigation progresses and the parties conduct discovery, however, the standard may become less lenient. *See Anderson*, 488 F.3d at 953 (citing *Hipp*, 252 F.3d at 1217–19).

In any case, the decision is ultimately "soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219. If the court conditionally certifies the action, the putative class members are given notice and an opportunity to opt into the action, and it "proceeds as a representative action throughout discovery." *Id.* at 1218.

The second stage of the certification process is "typically predicated by a motion for 'decertification' by the [employer] usually filed after discovery is largely complete and the matter is ready for trial." *Id.* At this stage, there is a more extensive and detailed factual record, and the standard for determining similarity is "less lenient." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). At this juncture, the law places a heavier burden on the plaintiff to satisfy the "similarly situated" determination. *Id.* If the record shows that the opt-in plaintiffs are not similarly situated, then the collective action becomes decertified, and the opt-in plaintiffs are dismissed without prejudice. *Hipp*, 252 F.3d at 1218. If they are similarly situated, the collective action

proceeds to trial. *Id.*

## DISCUSSION

Plaintiffs seek to conditionally certify a proposed collective that includes at least 1,300 growers "who . . . grew chickens for Perdue under a Perdue Poultry Producer Agreement" in the past three years. [Doc. 52-1, pp. 7, 9]. Plaintiffs also seek the Court's approval for a proposed notice to be sent to potential class members who meet this definition, as well as Perdue's disclosure of a list of individuals in the potential class so that the notice can be sent. [*Id.* at pp. 7–8]. At this stage, Plaintiffs bear the burden of showing that the individuals in the proposed collective (1) "desire to opt-in" to the collective action and (2) are "similarly situated." *Dybach*, 942 F.2d at 1567. Perdue objects to conditional certification on the grounds that, among other things, Plaintiffs "failed to provide sufficient evidence to show that other growers in the nationwide class [they] seek[] to represent . . . wish to opt in." [Doc. 59, pp. 15–16]. Plaintiffs argue that the opt-in consent filed by the only opt-in plaintiff "indicates that other growers desire to join this suit and would join if given notice," and "one or two opt-in plaintiffs are sufficient to permit conditional certification" in the Eleventh Circuit. [Doc. 52-1, pp. 16, 19].

The Court addresses the merits of Perdue's objection on the first prong of the *Dybach* analysis, and, because the Court finds that Plaintiffs fail to meet their "burden of demonstrating a reasonable basis for crediting their assertions that aggrieved

individuals exist[] in the broad class that they proposed," the Court does not reach issue of whether members of the proposed class are similarly situated. *Haynes*, 696 F.2d at 887.

First, a somewhat heightened standard of scrutiny is appropriate in this case because the Parties have already engaged in six months of discovery focused on conditional certification. A court's decision whether to create an opt-in class under § 216(b) is normally subject to "a fairly lenient standard" because the evidence at the notice stage is typically "only the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1219. However, because the rationale for the lenient standard disappears once a plaintiff has had an opportunity to conduct discovery, the standard may become less lenient as the litigation progresses. *See Green v. Atlas Senior Living, LLC*, 2022 WL 2007398, at *5 (S.D. Ga. June 6, 2022); *Anderson*, 488 F.3d at 953 (citing *Hipp*, 252 F.3d at 1217–19).

As agreed, the Parties engaged in six months of discovery focused on conditional certification—the very issue before the Court in this Motion. *See* [Doc. 45]. This discovery included extensive written discovery, a 30(b)(6) deposition, and depositions of Parker and Tripp (the one opt-in plaintiff). [Doc. 59, p. 5]; *see* [Doc. 49]. In their Response, Plaintiffs urge that the only effect of discovery at this stage "is that the Court may now look beyond the pleadings and affidavits in deciding whether notice is appropriate." [Doc. 70, p. 7]. But even the cases Plaintiffs provide suggest that engaging

in discovery raises the level of scrutiny at the conditional certification stage.

For example, in *Mason v. Atlanta Beverage Co.*, the Northern District of Georgia found that because "the discovery period was open for four months . . . a heightened standard of scrutiny [was] necessary." No. 1:17-CV-2293-TWT, 2018 WL 3655374, at *2 (N.D. Ga. Aug. 2, 2018). The court went on to note that, "[w]hile certain district courts have applied a stricter standard at the notice stage than the one articulated in *Hipp*, it does not appear a court has articulated the exact standard of proof applicable to a motion for conditional certification filed after extensive discovery has taken place." *Id.* (quoting *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1292 (N.D. Ga. 2014)). The court declined to "define precisely where along the continuum of proof th[at] case l[ay]" because the height of the standard depends "on the amount of discovery that has taken place in a given action." *Id.* (first quoting *Pickering v. Lorillard Tobacco Co., Inc.*, No. 2:10-CV-633-WKW, 2012 WL 314691, at *9 (M.D. Ala. Jan. 30, 2012); and then quoting *Ide*, 32 F. Supp. 3d at 1292 n.5). Because the Parties have had the opportunity to conduct discovery focused on conditional certification, the Court will apply a somewhat higher standard.

Second, Plaintiffs fail to meet their burden of showing show that a substantial number of individuals in the proposed class "desire to opt-in" to the collective action—even under a lenient standard. *Dybach*, 942 F.2d at 1567. On this prong of the *Dybach* analysis, "[t]he evidence provided, including the number of plaintiffs who have already

7

opted-in or names of people who have indicated interest in joining the suit, must be considered in light of the size of the proposed class and the publicity of the suit at the time of the motion for conditional certification." *Mason*, 2018 WL 3655374, at *6. To be clear, as this Court has said, "there is no 'magic number' of other employees that must come forward before [the Court] will conditionally certify a FLSA collective action" like this one. *Gouldie v. Trace Staffing Solutions, LLC.*, No. 5:21-CV-00088-TES, 2021 WL 4944800, at *5 n.2 (M.D. Ga. Oct. 22, 2021). But the number of opt-ins required to justify conditional certification necessarily depends on many factors—including the size of the class plaintiff seeks to represent. *See id.* at *5.

The Court gave Plaintiffs six months to conduct discovery and gather evidence to justify conditional certification, and the only evidence suggesting that other growers desire to opt into this case is the single opt-in by Barbara Tripp and statements from Parker and Tripp that "they believe that other growers would be interested in joining the class were the Court to send out Plaintiffs' requested Notice." [Doc. 52-1, p. 20].

One opt-in is insufficient to show substantial interest in this proposed class of over 1,300 individuals in 11 locations in nine states across the country, even under the most lenient of standards. *See* [Doc. 59, pp. 17–18]. Parker and Tripp constitute less than 0.2% of the proposed class, and courts in this Circuit routinely decline to conditionally certify and send notice when plaintiffs show a much higher level of interest. *See, e.g., Linscheid v. Natus Med. Inc.*, No. 3:12-CV-67-TCB, 2012 WL 12861603, at *2 (N.D. Ga.

Nov. 15, 2012) (holding that 16% of proposed class was insufficient). The "extensive precedent" on which Plaintiffs rely fails to support their position that a single opt-in is enough in this case, or as they would argue, any case at all. *See* [Doc. 70, p. 15].

Plaintiffs direct the Court's attention to *Gouldie*, where this Court noted that "a formal consent to join . . . of just one other employee could have tipped the outcome of Plaintiff's motion in his favor." [*Id.* (citing *Gouldie*, 2021 WL 4944800, at *5 n.2)]. That was true under the facts of *Gouldie*, where the potential class size was only 56 people. *Gouldie*, 2021 WL 4944800, at *3. However, the Court also noted in *Gouldie* that "a plaintiff can satisfy the . . . 'desire to opt-in' requirement . . . by filing a *substantial number* of consents from other employees claiming to be similarly situated." *Id.* at *5 (quoting *Montford v. Forestry Mgmt. Serv., LLC*, No. 5:18-CV-19-MTT, 2018 WL 3715719, at *3 (M.D. Ga. Aug. 3, 2018)) (emphasis added). That phrase—"a substantial number of consents"—doesn't draw a neat, bright line as Plaintiffs suggest. *See id.*

The other cases Plaintiffs highlight are also unpersuasive. [Doc. 70, p. 15]. For example, although the Northern District of Georgia noted in *Bailey v. Southern Therapy Services* that "[one opt-in] alone could demonstrate that other employees wish to opt into this lawsuit," that is dicta, and it is not a proposition for which *Bailey* stands. [*Id.* (citing No. 1:20-CV-02445-SDG, 2022 WL 16951683, at *2 (N.D. Ga. Mar. 28, 2022))]. In fact, the *Bailey* court cited *Stevenson v. Great American Dream, Inc.* as authority for that proposition. 2022 WL 16951683 at *2 (citing No. 1:12-CV-3359-TWT, 2013 WL 4217128,

9

at *2 (N.D. Ga. Aug. 14, 2013)). In *Stevenson*, the Northern District of Georgia found that one opt-in was enough *where the proposed class was quite limited*: entertainers who worked in a single nightclub in Decatur, Georgia. 2013 WL 4217128, at *2. Plaintiffs also cite *Brown v. Refuse Materials, Inc.*, where the court found that the single opt-in was "not necessarily an insignificant number" because the proposed class was a small group of floor installers who worked a company that employed only 30–40 floor installers. [Doc. 70, p. 15 (citing No. 7:13-cv-37-HL, 2013 WL 2387750, at *3 (M.D. Ga. May 30, 2013))]; *see Brown*, 2013 WL 2387750, at *3; Motion to Certify Class, *Brown v. Refuse Materials, Inc.*, 7:13-cv-37-HL (M.D. Ga. Aug. 1, 1985), ECF No. 4-1. According to Plaintiffs, "Perdue provides no reason for the Court to depart from these cases." [Doc. 70, p. 16]. The burden rests on Plaintiffs, and they have failed to demonstrate that the cases they provided should determine the outcome here. *See Dybach*, 942 F.2d at 1567.

Further, the declarations filed by Parker and Tripp stating that "they believe that other growers would be interested in joining the class were the Court to send out Plaintiffs' requested Notice" are speculative and thus insufficient. [Doc. 52-1, p. 20]. It is well-settled that speculative statements that others might wish to opt-in are insufficient to justify conditional certification. *See Haynes*, 696 F.2d at 887–88. Plaintiffs argue that they "belie[ve] that other growers desire to join . . . based on their extensive experience growing, their conversations with other growers, and their visits to other growers' farms." [Doc. 70, p. 16 (first citing [Doc. 52-4, Parker Decl., ¶¶ 7–8]; and then citing

10

[Doc. 52-5, Tripp Decl., ¶¶ 7–9])]. Yet, in their depositions, both Parker and Tripp conceded that they weren't aware of *any* growers who wish to join this action. [Doc. 59-2, Parker Depo., p. 180:2-3 ("Ain't nobody told me that they wanted to join as saying yes, I want to join.")]; [*id.* at p. 45:5-8 (stating that he was unable to identify any other growers who wish to join the action)]; [Doc. 59-3, Tripp Depo., pp. 33:21–34:1 (stating that she is unaware of any grower who wishes to join this action)]. Their beliefs are unsupported by facts, and that kind of speculation can't satisfy Plaintiffs' burden to show that other growers desire to join this action. *See Haynes*, 696 F.2d at 887–88.

Plaintiffs have had more than six months to try to gin up interest from the more than 1300 growers they seek to represent and that they claim may be interested in joining this suit. And, in all that time, one additional grower has signed up. Bottom line: two out of 1300+ just isn't enough for the Court to conditionally certify this would-be collective action.

The Court now turns to opt-in Plaintiff Barbara Tripp's claims. "Generally, when conditional certification of a collective action is denied, existing opt-in plaintiffs are dismissed from the lawsuit without prejudice and the matter proceeds on the named plaintiff's individual claims." *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018) (first citing *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008); and then citing *Hipp*, 252 F.3d at 1218). Finding no reason to deviate from the general rule in this case, the Court **DISMISSES** opt-in Plaintiff Barbara Tripp from this

lawsuit **without prejudice**. *See id.*

## CONCLUSION

Because Plaintiffs failed to meet their burden of showing that there are a substantial number of growers who desire to opt into this FLSA collective action, the Court **DENIES** Plaintiffs' Motion for Conditional Certification [Doc. 52]. *See Hipp*, 252 F.3d at 1218–19; *Dybach*, 942 F.2d at 1567. The Court then **DISMISSES** opt-in Plaintiff Barbara Tripp from this lawsuit **without prejudice** and, accordingly, **DENIES** Perdue's Motion to Dismiss Opt-In Plaintiff Barbara Tripp's FLSA Claims [Doc. 58] **as moot**. *See Mickles*, 887 F.3d at 1280.

Plaintiff Parker will proceed on his individual claims. Upon the issuance of this Order, the Parties will move on to Phase 2 of discovery, which will last five months. [Doc. 51, pp. 1–2]. "Any motions for summary judgment shall be filed on or before 60 days following . . . the end of discovery." [Doc. 45, p. 7].

**SO ORDERED**, this 14th day of March, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
