**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **ROGER PARKER,** *on his own behalf and on behalf of all others similarly situated,*<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**PERDUE FOODS, LLC,**<br><br>    *Defendant.* | **CIVIL ACTION NO.**<br>**5:22-cv-00268-TES** |

## ORDER

Before the Court is Defendant Perdue Foods, LLC's Motion to Strike Class

Allegations and/or Deny Class Certification [Doc. 82].

### BACKGROUND[1]

On July 22, 2022, Plaintiff filed his Complaint [Doc. 1] alleging that Perdue

should have classified him (and others similarly situated) as an employee instead of an

independent contractor. [Doc. 1, ¶ 1]. Because of that misclassification, Plaintiff seeks

relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,*[2] and the Federal

Declaratory Judgment Act, 28 U.S.C. § 2201(a) *et seq.,* along with Georgia-law claims of

---

[1] Because the Court laid out the factual background in previous Orders, it does not lay out the entire history again—instead, it includes only the facts that are relevant and necessary to this Order. *See* [Doc. 27]; [Doc. 77].

[2] The Court denied Plaintiff's Motion for Conditional Certification of his FLSA collective action. *See* [Doc. 52]; [Doc. 77].

fraud,[3] breach of contract, unjust enrichment, and negligent misrepresentation. *See generally* [Doc. 1].

Plaintiff's Complaint alleges that Perdue—the third largest broiler chicken company in the country—outsources "the process of raising birds to broiler growers," like Plaintiff, and considers them "independent farmers." [*Id.* at ¶¶ 14–15]. In the recruiting process, Plaintiff alleges that Perdue promises these farmers "independence and financial success." [*Id.* at ¶ 16]. However, Plaintiff contends that Perdue controls "virtually every aspect of [the] growers' operations." [*Id.* at ¶ 18]. According to Plaintiff, Perdue requires these farmers to agree to an exclusive contract—a Poultry Producer Agreement ("PPA")—with Perdue, which prohibits any visits to other farms associated with another integrator and requires construction of their farms in conformity with specific instructions from Perdue. [*Id.* at ¶¶ 19–25]. Perdue also monitors and trains these farmers throughout their time under the contract. [*Id.* at ¶ 26]. Perdue also utilizes supervisors who visit farms "at least weekly" to ensure compliance with Perdue's requirements. [*Id.* at ¶ 37]. On top of that, Perdue also controls the timing, delivery, and number of birds in each flock. [*Id.* at ¶ 56]. Likewise, Perdue controls the medications, feed, and other supplies that farmers can use in the operation. [*Id.* at ¶¶ 55–58].

In this Motion, Perdue asks the Court to strike Plaintiff's class allegations before

---

[3] The Court dismissed Plaintiff's common-law fraud claim without prejudice and with leave to amend his Complaint. [Doc. 27]. Plaintiff never amended his Complaint to re-allege the fraud count.

proceeding to class discovery because "Plaintiff has failed to meet his burden of proving that the proposed nationwide class meets all four requirements of [Federal Rule of Civil Procedure] 23(a) and one of the three Rule 23(b) categories." [Doc. 82, p. 2]. More specifically, Perdue argues that "Plaintiff cannot establish commonality for the claims he attempts to assert on behalf of all growers nationwide because adjudication of these claims will necessarily require the factfinder to apply the different legal tests used in each of the [seven] subject states,[4] for each of the three claims Plaintiff asserts and defenses thereto." [*Id.* at p. 3].[5] Perdue's Motion puts the Court in an unusual—but not unprecedented—position. Typically, class action defendants make these arguments at the class-certification stage, not as a motion to strike. With that in mind, let's get to the applicable law.

## LEGAL STANDARD

The Court first sets the scene regarding the uncertainty of the appropriate standard underlying Perdue's request. In a typical case, Rule 23 requires a plaintiff to move for class certification by showing "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

---

[4] Plaintiff seeks to represent growers subject to PPAs in Georgia, Delaware, Kentucky, Maryland, North Carolina, South Carolina, and Virginia. [Doc. 82-1, p. 9]; [Doc. 84, p. 20–21].

[5] To be clear, Perdue only seeks dismissal of the "class action claims concerning non-Georgia Growers[.]" [Doc. 82, p. 2]. Perdue does not "concede that a Georgia class is appropriate," but instead contends it is "the only class Plaintiff could possibly represent, if he is able to establish all elements of Rule 23[.]" [Doc. 82-1, p. 1].

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[6] Fed. R. Civ. P. 23(a). Rule 23(b) requires a plaintiff to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members[] and that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). "The party *seeking* certification has the burden of proof." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). And, a district court evaluating these issues must "conduct a rigorous analysis to determine whether a class action satisfies Rule 23." *Id.*

But this isn't the typical case. Instead, Perdue has moved to preemptively deny class certification. Perdue asserts that the Court maintains an independent duty to determine whether to certify the class. [Doc. 82-1, p. 14]. That argument is neither novel nor without merit. Indeed, Rule 23(c)(1) instructs that: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." *See also Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215 (11th Cir. 2003) ("[Rule 23(c)(1)] requires that the district court determine 'as soon as practicable' after the lawsuit is filed whether the

---

[6] These requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy."

class action is to be so maintained."). "Although the Eleventh Circuit has previously upheld a district court order granting a motion to strike class allegations, it has never discussed the standard to apply when ruling" on a motion that effectively seeks to block class certification. *Jones v. Depuy Synthes Prod., Inc.*, 330 F.R.D. 298, 306 (N.D. Ala. 2018) (citing *Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994)).

In piecing together a standard, district courts have concluded that the proper test allows them "to strike [a] [p]laintiffs' class allegations only if it is clear from the face of the [operative pleading] that th[e] case cannot be maintained as a class action." *Id.*; *see also Goff v. LaSalle Bank, N.A.*, No. 09-CV-147-TMP-WMA, 2009 WL 10688475, at *3 (N.D. Ala. Sept. 16, 2009) ("However, motions to strike class allegations are not categorically improper just because they are filed prior to a determination of the issue of class certification. When the unsuitability of class treatment as to one or more issues is clear from the face of the complaint, and when entertaining a motion to strike does not mirror the class certification inquiry, motions to strike those allegations may be properly filed and considered before expensive and exhaustive discovery is undertaken.") (collecting cases). As one district court put it: "To dismiss [p]laintiff's class allegation before discovery would be an acknowledgment by [a] court that class certification is impossible[.]" *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *3 (S.D. Fla. Nov. 26, 2007).

Even though the Eleventh Circuit hasn't articulated a test for this exact

circumstance, it also hasn't been silent on the issue. Indeed, the Eleventh Circuit warned that "the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008). And, other binding case law instructs the same. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); *Huff v. N. D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973)[7] ("Maintainability may be determined on the basis of pleadings, but the determination usually should be predicated on more information than the complaint itself affords.") (cleaned up).

In the end, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising [a] plaintiff's cause of action." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). "A well[-]developed factual record is particularly important where, as is true here at least in large part, class certification is challenged on the asserted ground that the proposed class action would be

---

[7] Because the Eleventh Circuit was previously a part of the Fifth Circuit, cases decided by the Fifth Circuit prior to October 1, 1981, are precedential to this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

unmanageable." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). And, granting a motion to strike class allegation is a "rare remedy" reserved for drastic circumstances. *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-CV-00825-JHM, 2019 WL 5386484, at *11 (W.D. Ky. Oct. 21, 2019); *see also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1202 (6th Cir. 1974); *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977).

## DISCUSSION

With the legal standard (somewhat) cleared up, the Court moves on to applying the standard to this case.

### A.    Plaintiff Failed to Perform a Sufficient State-Law Analysis.

As an initial burden, if a proposed class implicates multiple states' laws, it "falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010). "Notably, in cases implicating the law of all fifty states, [t]he party seeking certification . . . must . . . provide an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles." *Id.* (citing *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007)). Obviously, this case does not implicate all fifty states—only the seven listed above. But, even "where the laws of fewer than all fifty states are at issue, it is clear that more than a perfunctory analysis is required." *Id.*

Here, Plaintiff did not engage in a sincere or extensive analysis of the relevant states' laws. Rather, he bet the farm that either Georgia and/or Maryland law applied to the case so that there was no need to go through each of the seven states' laws to demonstrate their requisite homogeneity. But, to Plaintiff's peril, Perdue did. [Doc. 82-3]; [Doc. 82-4]; [Doc. 82-5]. Although Plaintiff bore the burden on this issue, Perdue nonetheless laid out each of Plaintiff's claims, and then explained the relevant law for each potential state. Plaintiff only responded with overarching and general arguments that Georgia law should govern. [Doc. 84, p. 18]. Next, Plaintiff backtracked to argue that only Georgia *and* Maryland law should apply. [*Id.* at p. 26]. Finally, Plaintiff resorted to arguments about the possibility that law from Georgia, Delaware, Kentucky, Maryland, North Carolina, South Carolina, and Virginia apply to this case—but he still did not seriously analyze the differences in those laws. [*Id.* at p. 30].

Given this deficiency, the Court finds that Plaintiff did not carry his burden to analyze the potential conflicts between these state laws. *Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619, 624 (M.D. Ga. 2009). "If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied." *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 319 (S.D. Fla. 1998); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 (5th Cir. 1996); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 341 (N.D. Ill. 1997); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) ("Appellees see the 'which law' matter as academic. They say no variations in state

warranty laws relevant to this case exist. A court cannot accept such an assertion 'on faith.' Appellees, as class action proponents, must show that it is accurate."); *Smith v. U.S. Bank, N.A.*, No. 1:16-CV-21146-UU, 2017 WL 698530, at *12 (S.D. Fla. Feb. 22, 2017) ("Plaintiff's chart, which does not address different states' laws concerning the viability of a breach of contract claim based on incorporated [certain] regulations, is woefully insufficient to satisfy her burden of providing an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles to certifying the proposed class.") (citations omitted); *Chilton Water Auth. v. Shell Oil Co.*, No. CIV.A. 98-T-1452-N, 1999 WL 1628000, at *8 (M.D. Ala. May 21, 1999) ("The court does not have a duty to survey each state's law to determine whether the negligence, or other relevant, law of the 50 states is of sufficient commonality for plaintiffs' class claim to pass muster under Rule 23(b)(3). That burden falls on plaintiffs."). In this case, Plaintiff may have disputed parts of Perdue's robust state-law analysis, but he certainly did not engage with it on a granular or "extensive" level. Eleventh Circuit precedent requires more than a drive-by analysis; what Plaintiff offered is simply not enough. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004). And, that lack of extensive analysis requires the Court to deny class certification. *Id.*

### B.    Choice-of-Law Analysis

In the event a reviewing court determines a definitive standard that shows that Plaintiff's analysis of state laws surpassed minimal standards, the Court will

9

nonetheless evaluate the potential manageability of Plaintiff's proposed class. To do so, it must decide what law applies.

As an initial matter, because this matter implicates the Court's diversity jurisdiction, "the Court must apply the choice of law rules of the forum state—Georgia."[8] *Elder v. Reliance Worldwide Corp.*, No. 1:20-CV-1596-AT, 2021 WL 4558369, at *3 (N.D. Ga. Sept. 27, 2021) (citing *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008)). Georgia courts apply the rules of *lex loci contractus* and *lex loci delicti* in addressing choice of law issues. *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). Under these rules, respectively, contract disputes are governed by the "substantive law of the state where the contract was made" and tort disputes are "governed by the substantive law of the state where the tort was committed." *Id.*

Georgia's choice-of-law analysis is unique in "that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes." *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* This rule, though, is not without exceptions. Namely, if the parties

---

[8] Plaintiff's Complaint also invokes the Court's federal-question jurisdiction for his FLSA claims and its supplemental jurisdiction over his state-law claims. Regardless, the choice-of-law analysis for the state-law claims remains the same. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) ("It is well established that the *Erie* doctrine also applies to pendent state claims litigated in federal courts.") (cleaned up).

agree to a choice-of-law provision, Georgia courts will generally enforce that

agreement, absent public-policy concerns. *Becham v. Synthes USA*, 482 F. App'x 387, 391

(11th Cir. 2012); *CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 659 S.E.2d 359, 361

(Ga. 2008). And second, Georgia common law will not apply if doing so violates due

process. *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 571 (N.D. Ga. 2007). To be

consistent with due process, Georgia must have a "significant contact or significant

aggregation of contacts to the claims asserted by each member of the [potential] class,

contacts creating state interests, in order to ensure that the choice of [Georgia] law is not

arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

Now, back to this case. The parties' choice-of-law provision reads: "This

Agreement shall be governed by, and construed in accordance with, the laws of the

State of Maryland except to the extent doing so is prohibited." [Doc. 23-1, p. 10]. And,

the parties agree that all relevant growers' contracts included that provision. [Doc. 84, p.

26]; [Doc. 82-1, p. 13]. With that in mind, the Court maps out the analysis of each claim

below. *See Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 875 n.11

(11th Cir. 2018) ("[C]ourts are to undertake a separate choice-of-law analysis for each

claim.").

 1.    *Breach-of-Contract Claim*

The Court begins with the easiest: Because Georgia honors the parties' choice-of-

law provision,[9] it controls for purposes of the growers' claims arising out of the PPA.

*See Benjamin v. Am. Airlines, Inc.*, No. CV 213-150, 2015 WL 8968297, at *3 (S.D. Ga. Dec.

15, 2015). That means Maryland law applies to the growers' breach-of-contract claim

based on the PPA. *Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1236 (S.D. Ga. 2019);

*Auffarth v. Nationwide Mut. Ins. Co.*, No. CIV. WDQ-08-1399, 2011 WL 3897939, at *5 (D.

Md. Aug. 30, 2011) ("Maryland honors choice of law clauses in contracts, generally, and

that rule extends to damages issues arising from a contractual breach.") (citations

omitted).

But, the PPA also includes a forum-selection clause that requires "[a]ny action or

proceeding brought by either party hereto that is related to this Agreement" to be

brought "in the state or federal courts of the United States located in the county in

which the [Producer's] farm is located." [Doc. 23-1, p. 10]. If that weren't enough, the

parties included a second provision that reads:

> Any and all litigation between the parties that may be brought, or arise out
> of, in connection with or by reason of this Agreement and/or its
> Attachments shall be decided solely and exclusively in the state or federal
> courts of the United States located in the county in which the farm is

---

[9] Georgia does recognize exceptions to this general rule based on public-policy concerns. *Becham v. Synthes USA*, 482 F. App'x 387, 391 (11th Cir. 2012) ("[A] Georgia court will not enforce a choice-of-law provision when the application of foreign law would violate Georgia's public policy."). Neither party argues that applying Maryland law—or any other state's law—violates Georgia's public policy.

Perdue argues that the breach-of-contract claims are different, too, because the Court should evaluate the public-policy concerns of each potential growers' home states, but it cites no precedent for that proposition. Rather, Georgia courts routinely hold that "choice of law provisions will not be enforced if application of the clause would contravene[ ] a strong public policy **of this State**." *Belt Power, LLC v. Reed*, 840 S.E.2d 765, 771 (Ga. Ct. App. 2020) (emphasis added).

located.

[*Id.* at p. 12].

As the Eleventh Circuit explained in *Lipcon v. Underwriters at Lloyd's London*, a forum-selection clause is generally enforceable, except when the clause is found to be unreasonable under the circumstances. 148 F.3d 1285, 1292 (11th Cir. 1998). In reviewing the circumstances, the Eleventh Circuit instructs courts to consider if:

> (1) [the] formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy.

*Id.* The Court reviews each consideration in turn.[10]

First, "[i]n order for a forum selection clause to be invalidated on the basis of the first factor, fraud or overreaching, a plaintiff must specifically allege that the clause was included in the contract at issue because of fraud." *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011); *Lipcon*, 148 F.3d at 1296 ("By requiring the plaintiff

---

[10] The parties don't address the forum-selection clause in depth. For example, Perdue asserts, "[w]hether the Court ultimately concludes that the forum selection clauses here govern Plaintiff's specific claims or not doesn't matter." [Doc. 82-1, p. 21]. But it does. Perdue also states that "Plaintiff simply ignore[s] the choice of forum clause." [Doc. 86, p. 2]. Plaintiff seems to do just that.

Plaintiff's counsel, though, does argue that a similar forum-selection clause is enforceable in the related case of *Tripp v. Perdue Foods*, LLC, No. 1:24-cv-00987-JMC (D. Md. July 11, 2024), ECF No. 24. In that brief, Tripp argues that "Tripp and Perdue previously agreed to a valid and binding forum-selection provision that establishes [the Maryland district court] as the appropriate forum for their dispute." *Id.* at 19. Continuing, Tripp contends "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (citations omitted). Obviously, those arguments are not controlling or dispositive here, but they do lend some insight into Plaintiff's view on the forum-selection clause.

specifically to allege that the choice clause itself was included in the contract due to fraud in order to succeed in a claim that the choice clause is unenforceable, courts may ensure that more general claims of fraud will be litigated *in the chosen forum,* in accordance with the contractual expectations of the parties."). Plaintiff does not contend that the inclusion of the forum-selection clause itself was the result of fraud or overreaching. Instead, he argues that Perdue committed fraud/misrepresentations on the substance of the contract. That is not enough to render the forum-selection clause unenforceable. *Gordon v. Sandals Resorts Int'l, Ltd.,* 418 F. Supp. 3d 1132, 1138 (S.D. Fla. 2019).

As to the second factor, non-Georgia growers would not face an inconvenience by litigating their claims in their home jurisdiction. Instead, the inverse is true—it would be more inconvenient for non-Georgia growers to litigate their claims here. *Cf. Rucker,* 632 F.3d at 1237. Therefore, the second factor does not impact the analysis.

Third, "a forum selection clause will not be enforced if the chosen law would deprive the plaintiff of a remedy." *Id.* But, as discussed above, because of the choice-of-law provision, Maryland law applies to the breach-of-contract claims. Therefore, "[r]egardless of whether this action is litigated in a courthouse in [Georgia] or [any other state], the court will apply [Maryland] law to determine the enforceability of the . . . agreements." *Id.* Put another way, "the remedy will be determined under the same set of rules no matter where this case is heard." *Id.* For that reason, the third factor also

does not warrant non-enforcement of the forum selection clause.

Finally, the Court considers Georgia's public policy to determine if it supports enforcement. Georgia law is clear that "a forum selection provision in a contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Moon v. CSA-Credit Sols. of Am., Inc.*, 696 S.E.2d 486, 488 (Ga. Ct. App. 2010). For Georgia, those circumstances mirror the Supreme Court's test outlined above. *Laibe Corp. v. Gen. Pump & Well, Inc.*, 733 S.E.2d 332, 336 (Ga. Ct. App. 2012) ("Georgia has adopted the Supreme Court of the United States's ruling that forum-selection clauses are 'prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances.'") (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). That means, again, "the party opposing the provision must show that trial in the chosen forum will be so inconvenient that he will . . . be deprived of his day in court," or another "compelling reason such as fraud, undue influence, or overweening bargaining power." *Id.* As discussed above, Plaintiff does not overcome the presumption that the forum-selection clause should apply, therefore, no Georgia public policy cautions against its application.

In the end, while one law (Maryland) may apply to all growers' breach-of-contract claims, those claims must be litigated in the forum the parties chose. And for

the parties outside of the Middle District of Georgia, that is not this Court.[11]

2.    *Negligent Misrepresentation & Unjust Enrichment Claims*

The rest of Plaintiff's claims, though, are not as simple. For common-law-based claims—like negligent misrepresentation and unjust enrichment—a contractual choice-of-law provision doesn't help decide the issue. Indeed, "[a] choice of law provision that relates only to the agreement will not encompass related tort claims" that arise outside of a contractual agreement. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009); *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Claims arising in tort are not ordinarily controlled by a contractual choice of law provision."); *Baxter v. Fairfield Fin. Servs., Inc.*, 704 S.E.2d 423, 428 (Ga. Ct. App. 2010) ("Specifically, we concluded that the plaintiffs' tort claim was not governed by the choice-of-law provision in the agreement, because the provision [did] not state that any and all claims arising out of the relationship between the parties shall be governed by Florida law.") (cleaned up). As the Eleventh Circuit explained, "no Georgia case has ever held that [a choice-of-law provision] will bring in the entire body of law of the chosen state. Instead, in Georgia, a choice of law provision simply allows the contracting parties to choose the law of the state to govern their contractual rights and

---

[11] The Court acknowledges that its prior Order [Doc. 27] considered but did not decide—at that time—the applicability of the forum-selection clause because "it [was] not possible to know, for purposes of th[at] motion, that each PPA contains the exact same forum-selection clause without inspecting each particular one." [Doc. 27, p. 8]. But this time, things are different. The parties have agreed that the relevant growers' PPAs all contained the same language. [Doc. 82-1, p. 13–14]; [Doc. 84, p. 8 ("Perdue confirmed that the PPAs signed by all members of the class he seeks to certify are uniform nationwide.")].

duties." *Rayle Tech., Inc.*, 133 F.3d at 1409; *see also Vivids Corp.*, 721 F. App'x at 875 n.11 ("We note only that our cases hold that a choice-of-law provision that by its terms governs only the parties' contractual relationship may not provide the choice-of-law for non-contract claims."). And, as a refresher, the parties specifically limited the application of their choice-of-law provision to "[t]his Agreement"—not to all claims arising out of the parties' entire relationship.

That means the choice-of-law provision does not apply to claims separate from the PPA. Instead, for tort and common-law claims, federal courts sitting in Georgia revert to Georgia's choice-of-law rules. *Wilferd v. Digital Equity, LLC*, No. 1:20-CV-01955-SDG, 2020 WL 6827905, at *3 (N.D. Ga. Nov. 20, 2020) ("The Court instead must apply Georgia's traditional choice of law rules for tort claims."). So, we go back to square one.

Since Plaintiff's claims arise under common law,[12] Georgia law is the default. But that does not end the analysis. Once again, the Court must determine whether applying Georgia law to claims of class members from other states is consistent with due process. To do that, the Court "must analyze whether the State of Georgia has 'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of

---

[12] *Terrill v. Electrolux Home Prod., Inc.*, 753 F. Supp. 2d 1272, 1290 (S.D. Ga. 2010) ("Because unjust enrichment is a common-law claim, Georgia choice-of-law rules require application of Georgia law to each Plaintiff's unjust enrichment claim."); *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2015 WL 7313394, at *6 (M.D. Ga. Nov. 19, 2015) (holding that "fraud, negligent misrepresentation, and intentional misrepresentation" are common-law claims).

[Georgia] law is not arbitrary or unfair.'" *Brenner*, 258 F.R.D. at 571 (citing *Shutts*, 472 U.S. at 821–22).

Plaintiff argues that applying Georgia law does not violate due process for three main reasons.[13] First, Plaintiff argues that based on the choice-of-law provision, only Georgia and Maryland law are relevant, so the only due-process question is whether Georgia law conflicts with Maryland law. [Doc. 84, p. 21]. That argument misses the mark. As the Court just explained, the choice-of-law provision does not apply to Plaintiff's common-law claims.

Next, Plaintiff argues that Perdue and non-Georgia growers have "known and expected that a foreign jurisdiction's law would apply to any claims involving Perdue." [*Id.* at p. 26]. But that argument is also off base. The relevant question is not whether the non-Georgia growers expected some hypothetical foreign jurisdiction's law to govern, but rather if the non-Georgia growers expected *Georgia's* law to apply.[14] *See Shutts*, 472

---

[13] Plaintiff also argues that because there are no differences in the applicable laws, the Court need not do a due-process analysis. *See Shutts*, 472 U.S. at 816 ("We must first determine whether Kansas law conflicts in any material way with any other law which could apply."). There are obvious conflicts between Georgia law and the other state's laws. As discussed in more detail below, Georgia does not allow a claim for unjust enrichment on these facts, while other states' laws do. That is enough to show a material difference for this prong. *Adams v. Martinsville Dupont Credit Union*, 573 F. Supp. 2d 103, 110 (D.D.C. 2008) ("Where a cause of action exists in one jurisdiction, but is not recognized as a cause of action in another, it is axiomatic that a true conflict of law exists.").

[14] What's more, Plaintiff's argument that the application of foreign law should not come as a surprise because of the Maryland choice-of-law provision does not help his case. Instead, the non-Georgia growers contractually agreed to be bound by Maryland law to the exclusion of all other states, including Georgia, for any contract claims. Nothing in the record shows that the growers from outside of Georgia anticipated or expected they would be haled into a Georgia court to account for alleged tort and common-law claims based on Georgia law.

U.S. at 820 ("Even if one could say that the plaintiffs 'consented' to the application of

Kansas law by not opting out, plaintiff[s'] desire for forum law is rarely, if ever

controlling."). To be sure, for Georgia law to apply—free of due process concerns—

there must be "significant contact or significant aggregation of contacts, creating state

interests, *with the parties and the occurrence or transaction*." *Allstate Ins. Co. v. Hague*, 449

U.S. 302, 308 (1981). That means Plaintiff must show that the non-Georgia growers

interacted with Georgia in a significant way, in relation to the underlying claims.[15] But

doing so would require separate analyses for the over 1,300 growers in this case. *Auto.*

*Leasing Corp. v. Mahindra & Mahindra, Ltd.*, No. 1:12-CV-2048-TWT, 2014 WL 988871, at

*4 (N.D. Ga. Mar. 14, 2014). That the Court is not required to do because the very

And, as discussed above, the parties' agreement also includes a forum-selection clause which requires "any and all litigation between the parties that may be brought, or arise out of, in connection with or by reason of this Agreement and/or its Attachments shall be decided solely and exclusively in the state or federal courts of the United States located in the county in which the farm is located." [Doc. 23-1, p. 12]. That means each grower expected any civil action to take place in the county where their farm is located. And for non-Georgia growers, that means they expected to not be in court in Georgia.

[15] Plaintiff points to three cases, each of which is readily distinguishable. First, *In re Tri-State Crematory Litigation* involved contracts that would be partially performed in Georgia. 215 F.R.D. 660, 678 (N.D. Ga. 2003). Second, *In re Equifax, Inc., Customer Data Security Breach Litigation* involved a Georgia-based company with its principal place of business in Atlanta. 362 F. Supp. 3d 1295, 1308 (N.D. Ga. 2019). And third, *Sheffler v. Americold Realty Trust* originated from a data breach of a Georgia-based company. No. 1:21-CV-1075-TCB, 2024 WL 470250, at *1 (N.D. Ga. Jan. 16, 2024).

Plaintiff also points to *Mt. Hawley Insurance Company v. East Perimeter Pointe Apartments* for the proposition that the Eleventh Circuit applied Georgia common law to a contract dispute. 861 F. App'x 270. But that doesn't tell the entire story. In *Mt. Hawley*, the Eleventh Circuit explained Georgia's choice-of-law analysis and concluded that "[i]f the law to be applied to a contract dispute by a Georgia court or a federal court in Georgia is judicially-created, then the common law as expounded by the courts of Georgia must govern." *Id.* at 276. So far, so good. The problem for Plaintiff's analogy is that Georgia common law could unquestionably apply to the facts of that case since the underlying events occurred in Georgia. In other words, there was no due-process concern in applying Georgia law to that case. Not so on these facts.

existence of that many analyses of applicable law defeats commonality. *Id.* ("Because the [p]laintiffs have not shown that Georgia law would necessarily apply to all of the putative class members' claims for equitable relief, the class does not satisfy commonality for those claims."). Regardless, for the growers located outside of Georgia, the relevant transactions and occurrences took place on each growers' farms in Delaware, Kentucky, Maryland, North Carolina, South Carolina, or Virginia, respectively, all while doing business with a Delaware corporation that is domiciled in Maryland. If you're searching for the Georgia connection, you're not alone.

Finally, Plaintiff argues that "it is settled law that Perdue—by registering to do business here—is subject to the general jurisdiction of this state's courts such that *any* claim against Perdue could be brought in Georgia." [Doc. 84, p. 25]. Again, the wrong analysis. The relevant due-process concerns in this case center around the non-resident plaintiffs—not Perdue. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 267 (2017) ("*Shutts* concerned the due process rights of *plaintiffs*."); *Prac. Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 862 (N.D. Ill. 2018) ("The Supreme Court in *Bristol-Myers* explicitly distinguished *Shutts*, explaining that *Shutts* dealt with the due process rights of nonresident class members—not the due process rights of *defendants*.").

So, to review, Maryland law covers the prospective class members' breach-of-contract claims. But their common-law claims are governed by the laws of seven

different states. And those seven states offer vastly different interpretations of the common-law claims at issue here.

For example, for Plaintiff's proposed classwide claims of negligent misrepresentation, each state sets out different elements.[16] *See, e.g.*, *Harris v. Mercer Glob. Advisors Inc.*, No. 1:23-CV-01675-SDG, 2024 WL 1396646, at *3 (N.D. Ga. Mar. 31, 2024) ("Negligent misrepresentation in Georgia has three 'essential' elements: (1) negligent supply of false information to foreseeable persons; (2) reasonable reliance; and (3) proximate economic injury."); *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012) ("The parties agree that, in order to prove negligent misrepresentation under Delaware law, a plaintiff must show: (1) the existence of a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff suffered a pecuniary loss caused by reliance upon the false information."); *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988) ("The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."). Each of these distinguish the mental state necessary to prove the intent of the defendant as well as the understanding of the

---

[16] Virginia does not "recognize any tort of negligent misrepresentation." *Bentley v. Legent Corp.*, 849 F. Supp. 429, 434 (E.D. Va. 1994).

listener. *Begley v. Acad. Life Ins. Co.*, 200 F.R.D. 489, 498 (N.D. Ga. 2001); *Ace Tree Surgery, Inc. v. Terex S. Dakota, Inc.*, 332 F.R.D. 402, 410 (N.D. Ga. 2019).[17]

Additionally, the relevant states disagree about the application of Rule 9(b)[18] to negligent misrepresentation. For example, Kentucky requires negligent misrepresentation to be plead with particularity. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012) (interpreting Kentucky law and concluding that a plaintiff's "negligent-misrepresentation claims, like the rest of its allegations, must satisfy Rule 9(b)'s heightened pleading standard to survive dismissal"). The same is true for North Carolina. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 199 (M.D.N.C. 1997). Georgia, on the other hand, does not require negligent misrepresentation to be plead under Rule 9(b)'s standard. *See* [Doc. 27 (concluding that "Rule 9(b)'s heightened pleading standards do not apply to negligent misrepresentation arising under Georgia tort law.")]; *Kingdom Ins. Grp., LLC v. Cutler & Assocs., Inc.*, No. 7:10-CV-85 HL, 2011 WL

---

[17] The parties disagree about whether the law on independent contractor versus employee status matters at this stage. [Doc. 84, p. 20]; [Doc. 86, p. 6]. But Plaintiff's claims for negligent misrepresentation necessarily depends on Perdue's alleged representation "to [Plaintiff] and class members that growers would be treated as independent contractors." [Doc. 1, ¶ 144]. And that determination—whether that representation is false or not—becomes a question of law based on the state in which the grower resides. *Cf. Horn v. Kean*, 593 F. Supp. 1298, 1304 (D.N.J. 1984) ("At any rate, one's status as a public employee or an independent contractor is to be determined by state law."); *see also Ludolph v. Bechtel Assocs. Pro. Corp., D. C.*, 542 F. Supp. 630, 633 (D.D.C. 1982) (holding that a contract's characterization of a relationship is not dispositive). Deciding that question for each grower would require the Court to evaluate seven different state-law analyses to determine if Perdue misled the growers by alleging they would be independent contractors and not employees.

[18] Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake."

2144791, at *5 (M.D. Ga. May 31, 2011). This difference is just another in the litany of problems facing class certification in this case.

As for unjust enrichment, this ground has long been well plowed. Numerous courts have held that "the substantial variations in law among the fifty states [regarding unjust enrichment] 'swamp any common issues and defeat predominance.'" *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2013 WL 139913, at *6 (S.D. Fla. Jan. 10, 2013); *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1355 (S.D. Fla. 2019); *Dennis v. Whirlpool Corp.*, No. 06-80784-CIV, 2007 WL 9701826, at *4 (S.D. Fla. Mar. 13, 2007) ("The negligence, unjust enrichment and 'money had and received' claims also cannot be certified as a matter of law."); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009). Indeed, "some states preclude such claims when an adequate legal remedy is available, and many states say the existence of an enforceable contract will preclude an unjust enrichment claim. Because of such variations, federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment." *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008).

Even more problematic, under Georgia law, "courts have held that a plaintiff may not plead an unjust enrichment claim in the alternative to a claim for breach of contract when it is undisputed (or when the court has found) that a valid contract exists." *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012); *Marvin Hewatt*

*Enters., Inc. v. Butler Cap. Corp.*, 761 S.E.2d 857, 863 (Ga. Ct. App. 2014) ("Where there is an express contract, there can be no recovery based upon an unjust enrichment theory.") (citations omitted). Plaintiff doesn't dispute that the PPA is a valid, binding contract. Quite the opposite, actually. *See* [Doc. 1, ¶ 128 ("[PPAs] were binding and enforceable and were uniform in all material respects among all class members.")]. Therefore, Plaintiff—as the class representative—cannot bring an unjust enrichment claim under Georgia law. The ability of some plaintiffs to bring a claim in some states while others cannot bring the same claim in their home state is the quintessential example of differences in legal theories that makes class treatment disfavored. *Cf. In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005).

Taken together, these differences in the applicable state laws render a potential nationwide class action unmanageable. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987). Accordingly, the Court exercises its considerable discretion and concludes that the requirements of Rule 23 are not satisfied. *Id.*

## CONCLUSION

In the end, nothing in the record indicates that the non-Georgia growers in *any* class Plaintiff may ultimately propose "had any idea that [Georgia] law [c]ould control" any potential tort or common-law claims not arising directly from the PPA. *Shutts*, 472 U.S. at 822. Accordingly, applying Georgia law on those claims to the non-Georgia growers would violate due process, and no amount of class discovery would alter that

24

analysis.[19] That leaves the Court to apply the legal tests of at least three different theories from the law of seven different states to over 1,300 different growers. And because those claims are so untypical, they're simply unmanageable in a nationwide class action.

As for the breach-of-contract claims, while one state's law may apply, the parties' agreement designated a forum to decide the disputes arising from their contract. Georgia law requires the Court to honor the forum-selection portion of their agreement, which precludes class treatment in this Court.

Therefore, the Court **GRANTS** Perdue's Motion to Strike Class Allegations and/or Deny Class Certification [Doc. 82] and **DISMISSES** Plaintiff's claims to the extent he seeks to represent any grower outside of Georgia.

**SO ORDERED**, this 29th day of August, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[19] *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[Plaintiffs] do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.").