**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

ROGER PARKER,

      *Plaintiff*,

   v.

PERDUE FOODS, LLC,

     *Defendant*.

Case No. 5:22-cv-00268-TES

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

After almost three years of litigation, motions practice, and discovery, Defendant seeks to have this case dismissed at the eleventh hour. This belated attempt is based on Defendant's claims that Plaintiff 1) is not the proper party-in-interest and 2) should be judicially estopped because he did not disclose his causes of action during a years-old bankruptcy—when he was unaware of them. Defendant forfeited the first argument long ago: Defendant knew of its factual basis for challenging Plaintiff as the proper party-in-interest just *five days after this suit was filed*. And yet, Defendant sat on its objection for nearly three years. Its attempt to portray the party-in-interest rule as a nonwaivable issue of subject-matter jurisdiction contradicts clear Circuit precedent. As to the second claim, Defendant does not come close to meeting the demanding standard for judicial estoppel, which applies only when the party being estopped acted intentionally to make a mockery of the judicial system. Here, the evidence shows that Plaintiff's failure to disclose his claims in his bankruptcy was unintentional, as he did not even know his claims existed until after his bankruptcy closed. Both bases for Defendant's motion are meritless and its motion should be denied.

## I.    FACTUAL BACKGROUND

Plaintiff filed the Complaint in this case on July 22, 2022. ECF No. 1. Among other things, it alleged that Plaintiff worked for Defendant through 2019 and that Defendant, during that time, improperly classified him as an independent contractor. *E.g.*, *id*. ¶ 93-94. The Complaint included the FLSA, breach of contract, declaratory judgment, and negligent misrepresentation claims that are still pending today. ECF No. 90. On July 27, 2022, five days after the initial complaint was filed, Defendant obtained from PACER a copy of the docket in Plaintiff's bankruptcy case. Ex. D to Mot., ECF No. 104-7, at Perdue 007135 (Transaction Receipt). After reviewing the bankruptcy case, Defendant filed its first motion to dismiss on September 19, 2022. ECF No. 15. The Court denied, in part, that motion. ECF No. 27. Defendant filed its Answer on January 13, 2023. ECF

No. 30. In neither did Defendant raise a party-in-interest objection or reserve its right to do so.

The parties then engaged in discovery relating to conditional class certification, including document productions and deposing Plaintiff and Defendant's 30(b)(6) representative. The parties fully briefed Plaintiff's motion for conditional certification, which was resolved in March 2024. ECF No. 77. Defendant filed a motion to strike Rule 23 class allegations, which the Court resolved in August 2024. ECF No. 87. When Plaintiff filed an Amended Complaint in October 2024, ECF No. 90, Defendant filed an answer two weeks later, ECF No. 91, and the parties embarked on yet more discovery, including six depositions, third-party discovery, expert discovery, and the production of thousands of pages of documents. Discovery closed on April 30, 2025, and the parties exchanged expert reports one day after Defendant filed this motion. ECF No. 102. Despite knowing Plaintiff's claims were based on conduct occurring before his bankruptcy, at no time during the almost three-year litigation of this case did Defendant raise a party-in-interest objection.

Plaintiff, on the other hand, had no reason to believe he was not the proper party to pursue the pending claims. Plaintiff spent most of his working life as a chicken farmer. Parker 2023 Dep., Ex. 3, at 57:4-14; Parker Decl., Ex. 2, ¶ 1. He has no legal training and has filed for bankruptcy only once—after Defendant refused to place additional chickens on his chicken farm. Parker 2025 Dep., Ex. 4, at 245:10-17; Parker Decl. ¶¶ 8-9, 20. Before that, Plaintiff worked for Defendant for approximately 13 years. Parker Decl. ¶ 1; Parker 2025 Dep. at 31:13-20. During that time, Defendant repeatedly told Plaintiff he was an independent contractor—in his contracts, by paying him through an IRS Form 1099, and by having Plaintiff take all the risk in obtaining and funding equipment upgrades for growing chickens. Parker 2023 Dep. at 70:2-5, 125:25-129:13; Parker Decl. ¶ 2, 5; Ex. A to Mot., ECF No. 104-3, Ex. 4 to Parker 2023 Dep. Defendant treated other growers Plaintiff knew the same way. Parker Decl. ¶ 3. Defendant's extreme control over

Plaintiff's daily operations differed from prior employers. Parker 2025 Dep. at 36:1-37:20, 45:1-6, 194:1-197:10, 199:10-200:14, 215:15-217:7, 221:2-222:23, 235:10-236:1, 238:13-22; Parker 2023 Dep. at 158:5-12, 160:19-161:5, 167:6-15, 184:9-202:24. But Plaintiff did not know he may have FLSA or related contract and misrepresentation claims arising from it. Parker Decl. ¶¶ 5, 7, 10, 13. Indeed, Plaintiff sought attorney advice once it became clear Defendant intended to take away his job, but even then, he still had no knowledge or understanding that Defendant's treatment of him may give rise to legal claims. Parker Decl. ¶¶ 9-10.

Plaintiff filed for bankruptcy on July 29, 2021. Case No. 21-bk-55658 (N.D. Ga.), ECF No. 1. On January 5, 2022, Plaintiff amended his disclosure after he discovered farm equipment was still on his son's farm. Parker Decl. ¶ 11. On February 2, 2022, the bankruptcy court discharged Plaintiff's debts and closed the case. Case No. 21-bk-55658, ECF No. 17. Continuing to search for assistance in the wake of losing everything, on March 9, 2022, Plaintiff was connected to his current counsel at Fairmark Partners, LLP, for the first time. Parker Decl. ¶ 15. It was then that Plaintiff understood for the first time that he may have claims for unpaid wages and overtime under the FLSA and related contract and misrepresentation claims. *Id*. ¶ 16. And when, in the last several weeks, Plaintiff became aware that he may be required to disclose his claims in his bankruptcy, he has reconnected with his bankruptcy attorney and the attorney has since filed to reopen Plaintiff's bankruptcy. *Id*. ¶¶ 17-19; Ex. 5, Mot. to Reopen, No. 21-bk-55658, ECF No. 21 (representing Plaintiff did not disclose during the bankruptcy because he was unaware of claims).

## II.    DEFENDANT FORFEITED ITS OBJECTION THAT PLAINTIFF IS NOT THE REAL PARTY IN INTEREST.

Defendant argues that, because Plaintiff's claims accrued before he filed for bankruptcy in 2021, the claims belong to the bankruptcy estate and only the bankruptcy trustee can bring them. Mem., ECF No. 104-2, at 2. Defendant presents the issue as one of Article III standing and thus

subject-matter jurisdiction, *see id.* at 1 (citing Fed. R. Civ. P. 12(h)(3)), presumably seeking to avoid waiver. But Circuit precedent is clear: the party-in-interest rule does not go to subject-matter jurisdiction and is instead subject to standard rules of waiver and forfeiture. Defendant plainly forfeited the argument here. Despite being aware of Plaintiff's bankruptcy and the pre-petition accrual of his claims as early as July 27, 2022, Defendant sat on its hands for almost three years. Having now litigated to the eve of summary judgment, Defendant now seeks to raise a party-in-interest objection at the eleventh hour. Defendant forfeited it and its motion should be denied.

### A.    The Party-In-Interest Rule Is Not Jurisdictional.

Defendant is mistaken to rely on Federal Rules of Civil Procedure 12(b)(1)[1] and 12(h)(3) to seek dismissal on the ground that only the bankruptcy trustee can bring the pending claims. Rule 12(h)(3) allows courts to dismiss an action at any time if the court lacks subject-matter jurisdiction, including "if the requirements of Article III of the Constitution are not satisfied." *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010). Article III standing requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). These requirements cannot be waived or forfeited. But Defendant does not dispute that Plaintiff meets these requirements here. Nor could it. Plaintiff alleges he was financially injured by Defendant's failure to properly classify him as an employee, and this injury would be redressed through monetary damages awarded under a favorable judicial decision.

Whether a debtor or bankruptcy trustee can bring claims that accrued pre-petition, on the other hand, is a question of party-in-interest under Federal Rule of Civil Procedure 17(a). *Barger*

---

[1] Defendant cites only Rule 12(h)(3), but a motion to dismiss for lack of subject-matter jurisdiction is filed under Rule 12(b)(1). Rule 12(h)(3) simply makes clear that courts may dismiss for lack of subject-matter jurisdiction at any time.

*v. City of Cartersville,* 348 F.3d 1289, 1292 (11th Cir. 2003) *overruled on other grounds by Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017). The Eleventh Circuit is clear: "The real-party-in-interest requirement and Article III standing are two 'distinct issues' with separate considerations." *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1358 (11th Cir. 2021); *see also Barger,* 348 F.3d at 1292 ("It is undisputed that [plaintiffs'] employment discrimination claims satisfy all of [the Article III standing] requirements. The issue is really about who can litigate the claim, [plaintiff] or the Trustee"); *Live Ent., Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1277-78 (S.D. Fla. 2003) ("There is a distinction between questions of Article III standing and Rule 17(a) real party in interest status."); *Williams v. 3rd Home Ltd.*, 2023 WL 6248715, at *6 (M.D. Fla. Sept. 26, 2023) (real party-in-interest is "[d]istinct from...constitutional standing" and is a "requirement of Fed. R. Civ. P. 17(a)(1)"); *FDIC v. First Am. Title Ins. Co.*, No. 10-cv-3032, 2012 U.S. Dist. LEXIS 204368, at *23-24 (N.D. Ga. Mar. 14, 2012) (separating standing and party-in-interest arguments); *Walace v. Cousins*, 2015 WL 13841444, at *4 (N.D. Ga. Dec. 15, 2015) (noting the "distinction between a party's standing to bring a lawsuit and his status to prosecute a particular claim as the real party in interest pursuant to Rule 17(a)"); *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & Decamp, LLP*, No. 6:19-cv-1908, 2022 U.S. Dist. LEXIS 143686, at *11 (M.D. Fla. Aug. 11, 2022) ("While...Plaintiffs' Article III standing deals with the constitutional limitations on this Court's jurisdiction, the argument regarding assignments more accurately concerns whether Plaintiffs are 'the person[s] entitled...to enforce the asserted right,'…under Federal Rule of Civil Procedure 17."). Accordingly, Rule 12(h)(3)'s provision for dismissal for lack of subject-matter jurisdiction is inapplicable to Defendant's party-in-interest argument.

Despite citing Rule 12(h)(3), Defendant nowhere addresses, or even acknowledges, controlling authority requiring the Court to consider Defendant's objection under Rule 17. The

only justification Defendant provides for relying on 12(h)(3) comes in a footnote in which Defendant cites—without analysis—cases addressing actual challenges to Article III standing. *See* Mem. at 9 n. 8 (citing *McGee v. Solicitor General of Richmond Cnty., Ga.,* 727 F.3d 1322, 1326 (11th Cir. 2013) (no Article III injury-in-fact); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (same); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (rejecting argument that statute created non-waivable jurisdictional rule). But as noted above, the party-in-interest rule is not an issue of Article III standing. In fact, Defendant ignores portions of several of its own cited authorities characterizing the issue as one of party-in-interest. For example, Defendant cites the Eleventh Circuit's decision in *Barger* to assert that only the trustee has "standing," Mem. at 9 (citing *Barger*, 348 F.3d at 1292), but does not acknowledge the Eleventh Circuit's statement, *on the same page of the opinion that Defendant cites*, rejecting the defendant's attempt to portray a Rule 17 issue as one of Article III standing. *See also Rodgers v. First Horizon Home Loans & Countrywide Bank*, 2010 WL 11647579, at *3 (N.D. Ga. Jan. 29, 2010) (referring to party-in-interest); *Jones v. Clayton Cnty.*, 184 F. App'x 840, 842 (11th Cir. 2006) (same); *Isaac v. IMRG*, 224 F. App'x 907, 909 (11th Cir. 2007) (same); *In re Upshur*, 317 B.R. 446, 451-452 (2004) (same).[2] Accordingly, Defendant's motion to dismiss on the basis of "standing" is not an issue of subject-matter jurisdiction—meaning that standard rules of waiver and forfeiture apply.

> **B.    Objections Under Rule 17 Can Be Forfeited and Defendant Has Done So Here.**

The reason Defendant seeks to avoid Rule 17 is plain: Defendant has forfeited any

---

[2] Courts acknowledge that the real-party-in-interest issue can be "couched in standing language," *El v. Price*, 2010 WL 11647850, at *6 n.4 (N.D. Ga. Dec. 6, 2010), but while parties and courts may erroneously "collapse[ ]" the two issues, they are distinct, *Fisher*, 2 F.4th at 1358.

objection under it.[3] While Article III standing is jurisdictional and therefore unwaivable, the party-in-interest rule is not. *Steger v. GE*, 318 F.3d 1066, 1080 (11th Cir. 2003) ("[T]the real-party-in-interest defense…is not jurisdictional." (quoting *Fox v. McGrath*, 152 F.2d 616, 618 (2d Cir. 1945) (cleaned up)). Instead of implicating the Court's jurisdiction, Rule 17 is intended "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Id*. Because "the rule, therefore, is for the benefit of a defendant, [it] may be deemed waived." *Id*.; *see also Riggins v. Polk Cty*., 2014 WL 3900266, at *1 (M.D. Fla. Aug. 8, 2014), *aff'd*, 602 F. App'x 765 (11th Cir. 2015) ("Whether a party is the real party in interest is a waivable issue."); *Williams*, 2023 WL 6248715, at *6 ("Because the rule is for the benefit of the defendant and is not jurisdictional, it may be deemed waived."); *Pennington v. CGH Techs., Inc.*, No. 6:19-cv-2056, 2021 U.S. Dist. LEXIS 156204, at *15 (M.D. Fla. Aug. 18, 2021) ("[T]he real party in interest is a waivable objection based on noncompliance with the Federal Rules of Civil Procedure.").

"Courts have found that a Rule 17(a) defense is waived if the motion is not made with reasonable promptness." *Brice Bldg. Co. v. Clarendon Am. Ins. Co.*, No. 3:07-cv-196, 2008 U.S. Dist. LEXIS 134819, at *7 (N.D. Fla. Oct. 6, 2008) (collecting cases). Defendant was nowhere near reasonably prompt here.

Defendant misleadingly suggests it first learned Plaintiff may not be the real party-in-interest only after his "recent deposition" in April of this year. Mem. at 1. Not so. Defendant knew for ***almost three years*** before filing its motion that Plaintiff's suit was based on claims likely

---

[3] "[F]orfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004). "[J]urists often use the words interchangeably," *id.*, and nothing here turns on the distinction.

accruing before his bankruptcy petition was filed. The most telling evidence of Defendant's early knowledge is the PACER docket report of Plaintiff's bankruptcy case that Defendant attaches to its motion. Ex. D to Mot. According to the transaction receipt at the bottom, Defendant obtained the full docket for Plaintiff's bankruptcy case on July 27, 2022—just five days after Plaintiff filed suit and well before the time for Defendant's answer or first motion to dismiss.

Plaintiff's July 22, 2022, Complaint includes allegations relating only to conduct occurring before Plaintiff filed for bankruptcy and references the bankruptcy. *See* Mem. at 6 (acknowledging that "Plaintiff's initial Complaint…aver[s] that Perdue's actions forming the basis of this action *caused* Plaintiff's bankruptcy filing."). Defendant thus had all the information it needed to make its Rule 17 challenge on July 27, 2022. Yet Defendant raised no Rule 17 objection then, or in its motion to dismiss in September 2022, or in its Answer in January 2023. Instead, Defendant opted to pursue almost three years of litigation before filing this motion. During that three-year period, both the Court and the parties expended considerable resources on this case. By the time Defendant made its objection, the parties had completed discovery and had only expert depositions to conduct before filing summary judgment motions.[4] Discovery included multiple depositions, thousands of pages of documents, interrogatory responses, multiple meet-and-confers, the informal resolution of several discovery disputes, and expert reports. Defendant is not entitled to test the waters on the merits after waiting three years to belatedly make a procedural objection it knew about all along. *Cf. Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) ("[C]hanging course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing

---

[4] Defendant filed its motion one day before expert reports were due. *Compare* Mot., ECF No. 104 (filed May 8, 2025) *with* Amended Scheduling Order, ECF No. 102 (expert report deadline of May 9, 2025).

party's dime."). Moreover, during the almost three years that Defendant waited to raise its objection, it also won dismissal of several claims it now asserts belonged to a non-party.

In a footnote, Defendant suggests it preserved its "standing" argument because it pled an affirmative defense of estoppel and "raised…that Plaintiff's claims were part of the bankruptcy estate in its Answer." Mem. at 9 n.8. But the only reference to the bankruptcy estate in Plaintiff's Answer is in the context of asserting its estoppel defense. Answer, ECF No. 30 at 21-22. An estoppel defense is not a Rule 17 objection. *Cf. Harrison v. Forde*, 594 F. Supp. 3d 1291, 1295-96 (S.D. Ala. 2022) (finding pleading an affirmative defense that plaintiff "lacks proper standing" insufficient to raise a Rule 17 objection). Defendant's Answer cannot reasonably be construed as containing a party-in-interest objection.

Defendant is left then with having waited to raise its Rule 17 objection for the first time until summary judgment motions.[5] This is too late. *See First Union Discount Brokerage Servs., Inc. v. Milos*, 744 F. Supp. 1145, 1152 (S.D. Fla. 1990) (defendant waived Rule 17 objection when raised for the first time in opposition to motion for summary judgment and noting "if the [defendant] had any genuine question whether [plaintiff] was the real party in interest…it was their obligation to raise such question promptly"); *Pennington*, 2021 U.S. Dist. LEXIS 156204, at *16-17 (confirming magistrate judge's finding that plaintiff's party-in-interest objection waived where he was aware of it at the motion-to-dismiss stage but raised it only at summary judgment and finding plaintiff's claim that he needed a fully-developed record was "disingenuous"); *Brice Bldg. Co.*, 2008 U.S. Dist. LEXIS 134819, at *15-16 (finding Rule 17 objection waived because

---

[5] Given the timing and the fact that Defendant relies on evidence outside the four corners of the Amended Complaint to support it, it is likely the motion should be treated as one for summary judgment in any event. *See Harrison*, 594 F. Supp. 3d at 1294 n.3 ("Many courts have recognized that Rule 17(a)(3) applies to motions for summary judgment." (collecting cases)).

defendant waited four months after learning about the potential real-party-in-interest). Defendant has waived its Rule 17 objection and the Court should deny its motion to dismiss on this basis.[6]

## III.    DEFENDANT'S MOTION FOR JUDICIALLY ESTOPPEL SHOULD BE DENIED.

Defendant's alternative motion to have the court invoke judicial estoppel also is meritless. First, judicial estoppel is an affirmative defense and Defendant's motion is only properly considered as one for summary judgment. Second, Defendant falls far short of its burden under the summary judgment standard, which Defendant in no way acknowledges or addresses. Judicial estoppel applies only in cases of "cold manipulation," when a plaintiff intends "to make a mockery of the judicial system." *Slater*, 871 F.3d at 1180. It does not apply where, as here, an unsophisticated plaintiff unintentionally fails to disclose unfiled claims. Defendant has not shown that no reasonable jury could find that Defendant's failure to disclose his unfiled claims during the pendency of his bankruptcy was unintentional. Defendant's estoppel argument should be rejected.

### A.    Defendant's Request for the Court to Apply Judicial Estoppel Is Properly Construed as a Motion for Summary Judgment.

Defendant does not clearly identify the procedural mechanism by which it seeks to judicially estop Plaintiff from pursuing his claims—titling the motion as one to dismiss, Mot. at 1, but describing the relief it seeks as having the court "deem Plaintiff judicially estopped," Mem. at 10. Because judicial estoppel is an affirmative defense, however, *First Nat'l Bank of Oneida, N.A.*

---

[6] Even if Defendant had not waived its Rule 17 objection, dismissal is still inappropriate. Rule 17(a)(3) directs that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, *after an objection*, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3) (emphasis added); *see also United States ex rel. Bibby v. Wells Fargo Bank*, N.A., 906 F. Supp. 2d 1288, 1305 (N.D. Ga. 2012); *Ogier v. ADP TotalSource Servs.*, No. 1:17-cv-2025, 2018 U.S. Dist. LEXIS 58252, at *1-2 (N.D. Ga. Feb. 21, 2018).

*v. Brandt*, 851 F. App'x 904, 907 (11th Cir. 2021), Defendant's motion must be treated as one for summary judgment. *See Quiller v. Barclays American/Credit*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss."); *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643-46 (11th Cir. 2019)) (reviewing a summary judgment order on a judicial estoppel defense); *Wash. v. Shanahan*, 2019 WL 320582, at *6 (S.D. Ala. Jan 24, 2019) (finding plaintiff "correctly asserts that judicial estoppel is an affirmative defense and, as such, is properly raised under Fed. R. Civ. P. 8(c) or in a motion for summary judgment."); *Brown v. Keystone Foods LLC*, 2022 WL 2346376, at *1-2 (N.D. Ala. June 29, 2022) (reviewing judicial estoppel defense on a summary judgment motion); *McClain v. Ultimate Towing of Gainsville, Inc.*, 2017 WL 4932933, at *1-2 (N.D. Fla. Sept. 15, 2017) (same).

Defendant's motion cannot be treated as a Rule 12(b)(6) motion. An affirmative defense can be resolved on a motion to dismiss only if the complaint on its face establishes the elements of it. *Wash.*, 2019 WL 320582 at *6 (citing *Quiller*, 727 F.2d at 1069). As outlined further below, judicial estoppel has two elements: that plaintiff "(1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of [a] civil lawsuit and (2) intended to make a mockery of the judicial system." *Slater*, 871 F.3d at 1180. Here, the substance of Plaintiff's bankruptcy filings and evidence of his knowledge and intent regarding the existence of his claims when making those filings are not included in the Complaint's allegations. Defendant concedes as much by proffering evidence in support of its motion beyond the Complaint.

Accordingly, the Court must consider Plaintiff's motion as one for summary judgment.[7]

---

[7] Defendant repeatedly cites the district court's opinion in *James v. Penny OPCO, LLC*, 2024 WL 2330013 (N.D. Ala. May 22, 2024). There, the court treated a judicial estoppel motion as one under Rule 12(b)(6) but acknowledged that doing so limited the Court to considering only the four corners of the Complaint and court records of which it properly could take judicial notice. *Id.* at *1-2. As the Court noted, it could not take notice of "court records for the truth of the matters

**B.      Defendant Cannot Meet Its Burden to Demonstrate That No Reasonable Jury Would Find Plaintiff's Failure to Disclose Unintentional.**

Defendant bears the burden on its affirmative defense. *Grant v. Deutsche Bank Nat'l Tr. Co.*, No. 1:14-cv-133, 2014 U.S. Dist. LEXIS 189152, at *11-12 (N.D. Ga. May 30, 2014). To win its summary judgment motion, therefore, Defendant "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence…that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis added). When deciding whether summary judgment is appropriate, the court must view all evidence and draw any reasonable factual inferences in the light most favorable to the non-moving party—here, Plaintiff. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998). Moreover, the court cannot make credibility determinations, and "when conflicts arise between the facts evidenced by the parties, [courts] must credit the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).

To succeed on its motion, Defendant must prove two elements: that "the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit

---

asserted in the other litigation, instead the court may judicially notice court filings only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." *Id*. at *2 (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (cleaned up)). Yet, because the plaintiff there did not object to the Court taking judicial notice of "the statements and filings" from her bankruptcy, despite falling outside the scope of allowed notice, the Court expanded its review under Rule 12(b)(6). *Id*. Moreover, the plaintiff there proffered no evidence to contradict what the defendant provided of her intent. *Id*. at *1. Here, Plaintiff vigorously disputes Defendant's proffered evidence of intent and objects to the Court taking notice of evidence that does not fall within the narrow scope of allowable judicial notice. Accordingly, *James* provides no basis to consider this motion under Rule 12(b)(6).

of [a] civil lawsuit and (2) intended to make a mockery of the judicial system" when he did so. *Slater*, 871 F.3d at 1180. With respect to the second, "judicial estoppel looks towards cold manipulation and not an unthinking or confused blunder." *Id*. at 1181 (cleaned up). "As an equitable doctrine, judicial estoppel should apply only when the plaintiff's conduct is egregious enough that the situation 'demands equitable intervention.'" *Id*. at 1187. "When a plaintiff intended no deception, judicial estoppel may not be applied." *Id*. The key question, therefore, is whether Plaintiff "intended to mislead the court." *Id*. at 1186. To make this determination, courts are "free to consider any fact or factor" that is "relevant to the intent inquiry." *Id*. at 1185 n.9.

Plaintiff does not dispute that he omitted his claims here in his bankruptcy proceeding. Defendant cannot, however, meet its burden to show that no reasonable jury could find Plaintiff lacked the "cold manipulation" courts find to warrant estoppel. To the contrary, the evidence clearly shows that Plaintiff did not intend to mislead the bankruptcy court.

This lawsuit was not brought until after Plaintiff's bankruptcy was closed. And Plaintiff did not know he had potential FLSA and related claims against Defendant during the pendency of the bankruptcy. Parker Decl. ¶¶ 10, 13. Plaintiff did not learn he may have claims for unpaid wages and overtime under the FLSA, and related contract claims, until after his bankruptcy was closed. *Id*. ¶ 16. Moreover, it was only recently that Plaintiff learned he may have obligations to disclose the claims here in his bankruptcy and, upon learning this, he immediately reengaged his bankruptcy attorney, who has now filed to reopen Plaintiff's bankruptcy. *Id*. ¶ 17-19; Ex. 5.

Nor can Plaintiff be deemed sophisticated enough to have known about the claims here at the time of his bankruptcy. He has no training or experience with employment law, contract law, or the FLSA. Parker Decl. ¶ 20. Despite being involved in prior litigation, none of it involved issues resembling those at issue here. *See* Resp. to Interrogatories, ECF No. 104-9, at 10. Plaintiff

also has no experience with bankruptcy outside of the one at issue and amended his disclosure only once to add personal property. Parker Decl. ¶¶ 9, 11. He has no prior experience with unfiled or pending lawsuits falling in the scope of a bankruptcy estate. *Id*.

None of the evidence Defendant offers is inconsistent with Plaintiff's unintentional failure to disclose. First, Defendant proffers that "Plaintiff filed amended schedules to add items of his personal property not originally included and claim additional exemptions." Mem. at 13. This is true, but understanding he must amend to add personal property in no way indicates Plaintiff understood he had potential claims against Defendant at the time of his bankruptcy.

Second, Defendant proffers that "Plaintiff demonstrated an understanding that he had a duty to amend his schedules if they were inaccurate and further acknowledged that his claims against Perdue were never disclosed in the bankruptcy." *Id*. (citing Ex. A to Mot., Parker 2023 Dep., at 141:5-142:20). Defendant summarizes two, separate points of testimony in a manner that misleadingly suggests Plaintiff has admitted he knew at the time of his bankruptcy that he had claims to disclose. That characterization grossly misrepresents Plaintiff's testimony. In fact, the November 2023 testimony on which Defendant relies shows only Plaintiff's lack of understanding of the process. For example, when Defendant's counsel asked, "Are you aware of any version [of the bankruptcy disclosure] that includes the claims that you are making in this case as part of your assets?" Plaintiff responded, "Like I said, as far as things I own, there was a revision." Ex. A. to Mot., 2023 Parker Dep., at 142:10-16. Far from establishing no reasonable jury could find in Plaintiff's favor, Defendant's evidence shows Plaintiff clearly did not have knowledge of claims during bankruptcy, let alone a contemporaneous understanding they were relevant to it.

Third, Defendant proffers that Plaintiff was represented by counsel during his bankruptcy, has been represented by counsel here, and "has prior experience with litigation and working with

attorneys from at least six prior legal proceedings." Mem. at 13. But, again, Defendant offers no evidence (it has none) indicating Plaintiff understood he had potential claims to disclose. Working with an attorney did not change that. Parker Decl. ¶¶ 9-10, 17-18.

Fourth, Defendant proffers that Plaintiff "was aware of several other class action lawsuits against Perdue and other poultry producers, which resulted in multi-million-dollar settlements before he filed his Complaint in this matter." Mem. at 14. But Defendant does not explain how knowledge of unrelated lawsuits (involving antitrust claims) put Plaintiff on notice of the claims here, provide any evidence as to what Plaintiff's supposed "awareness" was, or even identify when Plaintiff became aware of the unrelated cases. Defendant's vague assertions are insufficient.

Fifth, Defendant relies on the fact that Plaintiff had not reopened his bankruptcy and amended his disclosure at the time Defendant filed its motion. *Id*. Plaintiff has now filed to reopen his bankruptcy. Parker Decl. ¶ 19; Ex. 5. Moreover, with Defendant offering no evidence as to why Plaintiff's reopening was delayed, the only available evidence is that in Plaintiff's declaration, which demonstrates Plaintiff's failure to remedy the disclosure issue was due entirely to his lack of understanding regarding post-bankruptcy obligations. Parker Decl. ¶¶ 17-18, 20.

Finally, Defendant misleadingly cites Plaintiff's deposition testimony to suggest Plaintiff knew he had FLSA, contract, and misrepresentation claims against Defendant from "day one" of working for Defendant. Mem. at 5, 5 n. 5 (citing Ex. A-1 to Mot., ECF No. 104-4 2025 Parker Dep., at 307:14-310:10, 313:2-317:13, 318:16-321:19, 323:12-324:2). The cited testimony is nothing more than Defendant's counsel attempting to improperly elicit inadmissible legal conclusions from Plaintiff about what does and does not constitute a breach of contract, an FLSA misclassification, or a legal misrepresentation; indeed, the questions do not even have a temporal scope as to when Plaintiff came to any understanding about legal concepts. *See, e.g*, Ex. A-1 to

Mot., 2025 Parker Dep., at 310:11-12 ("Q: What other ways do you think Perdue breached the agreement with you?"); *id*. at 313:2-4 ("When do you first believe that they misrepresented that you were an independent contractor?"). But putting aside that the Court cannot consider inadmissible evidence at summary judgment, *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005), the cited testimony does not even establish Plaintiff knew he had FLSA, contract, or misrepresentation claims at the time of his bankruptcy. For example, Defendant's counsel asked, "[D]id you feel like you were being treated as an employee day one?" Ex. A-1 to Mot., 2025 Parker Dep., at 314:18-19, to which Plaintiff answered, "I don't know what it—you know, what is all contributing to an employee and what you mean by that. But it's—everybody is an employee of somebody, I guess." *Id*. at 314:23-24. As another example, Defendant asked Plaintiff, "Well, you're contending that you were classified the wrong way. So I'm trying to understand…when you first felt that," to which Plaintiff responded, "I don't know what all the rules are for 1099. I just know I just was never treated the same way as—when I signed up it wasn't the same as…other growers I had grown for." *Id*. at 315:1-11. The cited testimony establishes only what Plaintiff has never denied—that when working for Defendant, he believed Defendant mistreated him and he believed this mistreatment was long-running. *See, e.g.,* Parker 2025 Dep. at 45:1-18, 281:16-22. As outlined further below, a general feeling of mistreatment does not equate to knowledge of specific legal claims as required for estoppel. *See Haynes*, 940 F.3d at 645; *Smith v. Werner Enters. ("Werner")*, 2015 WL 4512318, at *3 (S.D. Ala. July 21, 2015).

Even considering Defendant's proffered evidence, the circumstances of Plaintiff's omission are no different from those courts have found to support a finding of unintentional nondisclosure. In *Haynes*, for example, a former legal assistant at an employment law firm filed suit with FLSA and breach of contract claims, among others, against her former employer after

her bankruptcy was dismissed, even though the claims accrued during the pendency of it. 940 F.3d at 638-39. The Eleventh Circuit found one factor weighing against applying estoppel was that the plaintiff did not learn of claims she may have until after her bankruptcy was dismissed. *Id*. at 645. The court found this even though the plaintiff worked at an employment law firm because there was no indication she spoke to an attorney or did her own research on potential claims or that she was familiar with the FLSA at the time her bankruptcy was pending. *Id*. The court even discounted evidence that the plaintiff may have asked her employer about overtime pay before her bankruptcy, finding it "is likely not enough, by itself, to establish knowledge of a legal claim" against an employer under the FLSA such that estoppel would be appropriate. *Id*. The Eleventh Circuit also found the fact that there was no evidence the plaintiff was aware of her obligations to amend her disclosures to militate against judicial estoppel. *Id*. at 645–46. Based on these factors and the fact that the plaintiff likely did not have a motive to conceal the claims, the court noted, "it is far from clear that the district court would have (or could have on the record before it) applied judicial estoppel here." *Id*. at 645. Notably, the plaintiff had never amended her disclosures. *Id*. at 639.

Other courts have found estoppel to be inappropriate based on factors similar to those present here as well. *See, e.g.*, *Werner*, 2015 WL 4512318, at *3 (defendant's summary judgment burden on the basis of estoppel not met, in part, where evidence offered of the plaintiff knowing about an FLSA claim during bankruptcy was that the plaintiff previously had "questions" about overtime pay and had attended a meeting with an attorney but where defendant offered no evidence about the meeting's substance or plaintiff's understanding after it); *Ryder v. Lifestance Health Grp., Inc.*, 2024 WL 1119821, at *4 (M.D. Fla. Feb. 12, 2024) (finding defendant failed to establish estoppel, in part, because plaintiff quickly amended his disclosures after the issue was raised through defendant's motion to dismiss and plaintiff had been represented by different counsel in

his bankruptcy and employment suit, noting "this division of specialized labor explains how the inconsistency at issue could have arisen through miscommunication"); *Raymond v. Destine*, 2024 WL 5195881, at 10 (S.D. Fla. Dec. 23, 2024) (finding plaintiff was not sophisticated despite previously amending his disclosure and being advised by counsel).

Furthermore, the factors relied on in the cases Defendant cites are simply not present here. In *Weakley* and *James*, for instance, the plaintiffs had previously had multiple bankruptcies, had previously disclosed lawsuits, and were pursuing their undisclosed legal claims concurrently with the bankruptcy in which they did not disclose them. *Weakley v. Eagle Logistics*, 894 F.3d 1244, 1245-47 (11th Cir. 2018); *James*, 2024 WL 2330013, at *2, *4-5. In *Jones v. Savage Servs. Corp.*, the plaintiff had previously filed for bankruptcy and was concurrently pursuing legal claims when he filed the bankruptcy at issue. 2019 WL 2058715, at *2 (N.D. Ala. May 9, 2019). And in *In re Foufas*, the plaintiff took opposing positions before the same court in two separate proceedings and the court found he had spent "more than twenty years doing everything in his power to prevent [his former spouse] from collecting court-ordered maintenance payments." 650 B.R. 732, 741 (Bankr. S.D. Fla. 2023). The court also found important another court's finding that the plaintiff hid assets through a fraudulent transfer. *Id*. None of those circumstances are present here.

Defendant relies on the Eleventh Circuit's decision in *De Leon v. Comcar Indus.*, Mem. at 13, for factors that are no longer good law. Specifically, the *De Leon* court relied on a portion of *Burnes v. Pemco Aeroplex*, 291 F.3d 1282 (11th Cir. 2002), to infer a motive to conceal from the mere fact that any debtor stood to benefit from disclosing fewer assets. 321 F.3d 1289, 1292 (11th Cir. 2003). But the *Slater* court overruled that portion of *Burnes*. *See Slater*, 871 F.3d at 1185.

Finally, "[a]s a tool of equity, judicial estoppel should serve justice." *Haynes*, 940 F.3d at 646. But finding estoppel here would only pervert it. For over a decade, Defendant did everything

in its power to convince Plaintiff he was nothing more than an independent contractor. It labeled him as such in the contract, it paid him using IRS Form 1099s, it denied him reimbursement for expenses essential to conducting business for the benefit of Defendant, and it denied him the benefits typically associated with an employee-employer relationship. Parker 2023 Dep. at 70:2-5; Parker Decl. ¶ 2, 5. Now, after Defendant was successful in lulling Plaintiff—and almost anyone else with whom Plaintiff shared his plight—into believing he was not, in fact, misclassified, Defendant seeks to weaponize this to prevent Plaintiff from seeking relief. Defendant should not escape the merits of Plaintiff's claims because he believed Defendant's misrepresentations.

"The results of judicial estoppel are drastic—a party is deprived of the right to pursue a case regardless of the claim's merits. On the other side, a party escapes potential accountability for wrongdoing without regard to the merits of the claim." *Haynes*, 940 F.3d at 646; *see also Slater*, 871 F.3d at 1186 (describing the need to minimize the risk of giving "the civil defendant a windfall at the expense of innocent creditors."). As an equitable doctrine, "there is no per se rule estopping any party who fails to disclose potential claims to a bankruptcy court," and "trial courts are not *required* to apply it in every instance that they determine its elements have been met." *Wal-Mart Stores, Inc. v. Parker*, 789 F. App'x 462, 464 (5th Cir. 2020) (quoting *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (internal quotation marks omitted)) (finding the bankruptcy court did not abuse its discretion by refusing to apply judicial estoppel despite finding the elements met). The available evidence shows judicial estoppel is inappropriate here. At the very least, Defendant has failed to meet its burden to demonstrate that no reasonable jury could find Plaintiff's omission unintentional. *See Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1346 (11th Cir. 2006) (reversing summary judgment on defense of judicial estoppel because "there exist[ed] a question of material fact as to whether [the plaintiff] had the motivation

and intent to manipulate the judicial system"); *Raymond*, 2024 WL 5195881, at *4 (finding that, where some factors relating to intent weighed for and some against estoppel, they were "factual matters that can only be determined at trial and involve credibility determinations"); *Lord v. Univ. of Miami*, 2022 WL 4767772, at *20 (S.D. Fla. Aug. 8, 2022) (finding that determination of plaintiff's intent had to be left to the factfinder where the record showed Plaintiff "genuinely disputes whether 'he intended to make a mockery of the judicial system'"); *Werner*, 2015 WL 4512318, at *3 (finding Defendant had not met its burden on a judicial estoppel claim where it showed only that Plaintiff and other employees met with an attorney but provided no evidence about the content of the meeting or whether Plaintiff understood thereafter that he had a potential FLSA claim).[8] Defendant's motion for judicial estoppel should be denied.

## IV.    A STAY IS NOT WARRANTED.

Discovery in this case is complete, including expert depositions. Defendant's motion will be ripe for decision before any additional briefing is due. And courts allow stays pending the outcome of a potentially case-dispositive motion only where the motion appears, "upon preliminary review, to be *clearly meritorious* and truly case dispositive." *S. Motors Chevrolet, Inc. v. GM, LLC*, 2014 WL 5644089, at *1 (S.D. Ga. Nov. 4, 2014) (emphasis in original). Defendant has not attempted to explain why its motion, which does not even seek relief pursuant to the proper rules and applicable legal standards, is "clearly meritorious." A stay is unwarranted.

## V.    CONCLUSION

Defendant has waived its Rule 17 objection and failed to demonstrate it is entitled to summary judgment on its affirmative defense of judicial estoppel. Its motion should be denied.

---

[8] While ultimately the Court may have discretion with respect to invoking judicial estoppel, any factual dispute as to Plaintiff's intent is properly decided at trial. *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995).

Dated: June 12, 2025                          Respectfully submitted,

                                              /s/ *Amanda R. Vaughn*
                                              T. Brandon Waddell
                                              Ga. Bar No. 252639
                                              Jarred A. Klorfein
                                              Ga. Bar No. 562965
                                              Emily C. Snow
                                              Ga. Bar No. 837411
                                              **CAPLAN COBB LLC**
                                              75 Fourteenth Street NE
                                              Suite 2700
                                              Atlanta, Georgia 30309
                                              (404) 596-5600
                                              (404) 596-5604 (fax)
                                              bwadell@caplancobb.com
                                              jklorfein@caplancobb.com
                                              esnow@caplancobb.com

                                              Jamie Crooks (admitted *pro hac vice*)
                                              D.C. Bar No. 156005
                                              Kritika Deb (admitted *pro hac vice*)
                                              Amanda R. Vaughn (admitted *pro hac vice*)
                                              D.C. Bar No. 90033556
                                              **FAIRMARK PARTNERS, LLP**
                                              400 7th Street NW, Suite 304
                                              Washington, D.C. 20004
                                              jamie@fairmarklaw.com
                                              kritika@fairmarklaw.com
                                              amanda@fairmarklaw.com

                                              *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 12, 2025, I electronically filed on CM/ECF the foregoing

Opposition to Defendant's Motion to Dismiss for Lack of Standing, or, Alternatively, for Judicial

Estoppel, and For Stay, which will notify all counsel of record who have entered an appearance

in this case.

Date: June 12, 2025                                    *Amanda R. Vaughn*
                                                       Amanda R. Vaughn
                                                       Fairmark Partners, LLP