# **EXHIBIT A**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ROGER PARKER,<br><br>                  Plaintiff,<br><br>v.<br><br>PERDUE FOODS, LLC,<br><br>                  Defendant. | CIVIL ACTION<br>NO. 5:22-CV-00268-TES |

## DECLARATION OF MICHAEL LEVENGOOD

I, Michael Levengood, hereby declare and state under penalty of perjury as follows:

1. I am over the age of eighteen years and am competent to testify regarding the facts detailed herein.

2. I am not a party to the above-entitled matter and provide the following testimony without remuneration for the same.

3. I am currently the Vice President, Chief Animal Care Officer and Farmer Relationship Advocate for Perdue Foods LLC ("Perdue"). I have worked for Perdue for approximately 40 years and have held my current position since approximately the beginning of 2016. In this position, I am generally responsible for meeting with the independent contractor growers (also referred to as farmers) Perdue contracts with and talking about how the company can improve communications with them, getting their perspective on various aspects of the business, and serving as the liaison with the company on the same, among other things.

4. Perdue is an integrated poultry producer, also referred to in the industry as an "integrator." Within this integrated operation, Perdue owns hatcheries and breeding flocks and consigns its chicks to independent chicken farmers or "growers" who are then responsible for raising the chickens to the desired weight on their own farms. These growers own and provide the

land, facilities, equipment and labor to raise the chicks, using their discretion on how to do so given their experience in the industry and knowledge base.

5. Most other integrators, such as Tyson Foods, Pilgrams Pride, Wayne Sanderson, Cook Foods, Mount Air, Amick, and others operate under a similar business model and treat their growers as independent contractors who also own and provide the land, facilities, equipment and labor to raise the chicks. This is standard industry practice and has been throughout my time working in the industry.

6. In connection with my position and role for Perdue, I also participate in various industry groups, such as the National Chicken Council ("NCC"). The NCC is the national, non-profit trade association that represents the vertically integrated companies that produces and processes more than 95 percent of the chicken marketed in the United States. I served as the Chairman of the Grow Out and Health Committee for the NCC from 2005-2006. Representatives of all major poultry companies participate in these organizations. I was also a member of the Executive Board for the US Poultry and Egg Board for six years.

7. In connection with my prior position as Chairman of the Grow Out and Health Committee for NCC, I get regular emails and updates from the NCC. Ashley Peterson is the Scientific Vice President of Affairs for the NCC, who emails these updates from time to time. It is my understanding from Ms. Peterson that the NCC submitted comments to the Department of Labor regarding the independent contractor status of growers with integrators like Perdue. I received a copy of these comments from Ms. Peterson. A true and accurate copy of the comments she submitted to the Department of Labor on December 13, 2022, in connection with the proposed rule "Employee or Independent Contractor Classification Under the Fair Labor Standards Act" are attached hereto as Exhibit A.

8. In connection with my position, I also regularly hold farmer councils with various farmers. During these meetings, farmers will often raise various business or other concerns they have. Farmers will serve on the farmer council for two and a half years, and I typically meet with the farmers on the council every six months for approximately four hours. In my position, I have conducted over 300 farmer councils with growers over the years. Throughout my time in this position, I have never had a farmer raise any concern during a council meeting that they believed they should be paid as an employee.

9. Most Perdue growers, including Plaintiff Roger Parker, are/were paid under what we refer to as a "tournament system." This competitive tournament system provides opportunities for profit or loss by providing greater compensation to those who grow birds more efficiently through things like tier upgrades to their houses, effective bird husbandry, and other best management practices. This type of competitive tournament system is also a standard industry practice and, while not employed by all integrators or as to all types of birds, it is widely used throughout the industry.

10. Pursuant to the terms of the Poultry Producer Agreement, growers are contractually obligated to "[t]o feed, water, care for and otherwise manage the birds consigned, to provide necessary housing, utilities, equipment, labor and supplies and to maintain such housing and equipment in a state of good repair and operable condition."

11. Growers' chicken houses are graded as Tier 1, 2, 3, or 4, based upon standards established by Perdue and the tier level impacts the pay available to the grower, with Tier 1 houses having the lowest base pay and Tier 4 having the highest; growers may increase their potential pay by "upgrading" their houses to the next tier.

12. In addition to the chicken houses themselves, certain equipment is required to grow chickens, all of which are necessary for the health and welfare of the birds. Perdue can and will decline to place chickens on grower's farms if the grower's farm or the housing or equipment thereon pose animal welfare concerns. More specifically, it is essential that a farm provide equipment that is in good repair and operational condition at all times in order to prevent illness or death of chickens, which would cause problems with the flock and financial damage to both the grower and Perdue. Typically, Perdue will attempt to work with a grower to resolve any animal welfare issues and will only withhold chickens after numerous attempts to resolve the issues with the grower are unsuccessful.

13. Situations in which Perdue may decline to place chickens with a grower include where equipment failures pose dangers to the welfare of the birds. For example, if the farm lacks working fans or shutters such that the houses are not properly ventilated or are not receiving proper airflow, then Perdue may decline to place chickens with the grower. This is because a lack of adequate ventilation leads to a dangerous accumulation of ammonia and other harmful gases, which is known to cause respiratory illness and even death of chickens. Similarly, Perdue may decline to place birds at a farm that lacks equipment to provide adequate feed and water to the chickens, which Perdue considers essential to the care of the birds. These are just a few examples and are not exhaustive.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct according to my personal knowledge and, if called as a witness, I could and would testify truthfully thereto.

Dated  7/11/2025

Signed by:
*Mike Levengood*
A8637F97BA404C2...
Michael Levengood

4

# **EXHIBIT A**



1152 FIFTEENTH STREET NW, SUITE 430
WASHINGTON, DC  20005
PHONE: 202-296-2622

December 13, 2022

*Submitted electronically via regulations.gov*

Amy DeBisschop
Division of Regulations, Legislation, and Interpretation, Wage and Hour Division
U.S. Department of Labor, Room S-3502
200 Constitution Avenue NW
Washington, DC 20210

**Re:    RIN 1235–AA43 / Docket No. WHD-2020-0003 – Employee or Independent Contractor Classification Under the Fair Labor Standards Act**

Dear Ms. DeBisschop:

The National Chicken Council (NCC) appreciates the opportunity to provide comments on the Department of Labor's (DOL or the "Department") proposed rule "Employee or Independent Contractor Classification Under the Fair Labor Standards Act" ("Proposed Rule").[1]  NCC is the national, non-profit trade association that represents vertically integrated companies that produce and process more than 95 percent of the chicken marketed in the United States.  Many companies in the broiler chicken industry work with independent farmers to raise broilers and broiler chicks.  These farmers have long operated and been recognized as independent contractors.

NCC believes that the existing approach to determining whether an individual is an independent contractor has been appropriate for analyzing the status of independent chicken farmers and has resulted in the correct outcome for the chicken industry, which is that independent chicken farmers are properly considered independent contractors.  This classification reflects the independent nature of farming operations, the importance of the capital and skill that farmers provide, and longstanding industry expectations.  We encourage the Department not to change its approach with respect to independent chicken farmers.

Although NCC believes the current approach is the proper one for independent chicken farmers, after reviewing the Proposed Rule, we believe that under the proposed criteria, these farmers would remain independent contractors.  We therefore encourage the Department to clarify that independent chicken farmers would remain independent contractors under the proposed criteria in the event the Department were to finalize the Proposed Rule.  Below, we provide background on how the broiler industry operates, followed by our view regarding how the Department's proposed criteria would apply to these independent family farmers.

**Background Information on the Broiler Industry**

NCC members run integrated broiler production operations.  Typically, the integrator owns the broiler chicks and contracts with independent farmers to raise those chicks.  To briefly describe this contract farming structure, integrators deliver broiler chicks to the farmers after the chicks hatch.  The farmers

---

[1]    87 Fed. Reg. 62218 (Oct. 13, 2022).

1

raise the chicks into broilers using feed and, if needed, medicine provided by the integrator. The integrator also provides various services, such as veterinary care and animal husbandry advice. Farmers are responsible for providing the farmland, quality housing, farm maintenance, on-farm inputs, and day-to-day care of the broilers. When the birds reach market age and weight, the farmer is paid by a formula specified in the farmer's contract, typically based on weight gained by the flock, which is influenced by the farmer's skills in managing the farm, raising the bird, and choosing the right investments for the farm.

In a typical grow-out contract, farmers and integrators agree on a pre-determined target price per pound of weight gain based on an average. The specifics vary, but farmers are usually either paid the target plus a bonus for high performance, or farmer payments are adjusted slightly upward or downward from the target based on relative performance. Overall, regardless of the approach taken, farmers earn a predictable base payment plus the opportunity to earn a bonus for strong performance. This approach rewards skilled farmers who have honed their management practices to raise healthy birds most efficiently.

Through this arrangement, each party supplies the inputs they are best situated to provide, and the economic risks are allocated to the parties best situated to bear them. An integrator is better positioned to absorb feed cost fluctuations and routinely conduct complex grain hedging and procurement strategies than the family farmer, while the farmer is better positioned to care for the birds and efficiently manage the farm on a day-to-day basis. Farmers who manage their farms well receive incentive payments and shoulder none of the risks associated with other elements of the poultry processing supply chain, such as feed procurement and marketing.

This arrangement benefits farmers, integrators, and consumers. Independent farmers can deploy their farming investments to earn income based on their independent skill and expertise. Many chicken farmers run diversified farming operations, with contract chicken production providing one of several sources of revenue for the farm. Farmers retain control of their businesses and their land, and they can contract with different integrators, sell, or pass down their businesses, or even redeploy their capital to operations other than chicken farming. Contract farming likewise benefits rural communities by supporting small family businesses. Integrators receive the specialized services of experienced farmers, many of whom have honed their craft for many years, resulting in a highly efficient chicken production process that can quickly adjust to changing market conditions and support product innovation. This efficiency benefits consumers in the form of highly affordable, nutritious, and diverse chicken products.

**Contract Chicken Farmers Remain Classified as Independent Contractors Under the Proposed Rule**

In its proposal, DOL suggests six criteria to guide an assessment of the economic realities of the working relationship between an employer and independent contractor. As outlined below, considered together, DOL's proposed factors would strongly weigh in favor of categorizing contract chicken farmers as independent contractors.

1. Opportunity for Profit or Loss Depending on Managerial Skill (Proposed § 795.110(b)(1))

    Farmers maintain registered businesses in their respective states and can control their own successes almost entirely on how efficiently and effectively that farmer raises the birds. High-performing farmers can earn higher payments in the form of bonuses or incentives, whereas a farmer who performs poorly, neglects birds, or fails to maintain the farm risks earning less or even the loss of future business. In other words, a farmer's income, profits, and losses are direct results of the farmer's business decisions and management. Farmers are free to terminate their contracts and work with other integrators or redeploy their farm assets to other

farming operations.  Many farmers operate diversified farming operations, with poultry growing representing but one revenue stream for their farming business.

2.  Investments by the Worker and the Employer (Proposed § 795.110(b)(2))

Farmers are responsible for their own chicken growing facilities, land maintenance, and farm capital-related inputs.  While integrators supply the farmers with chicks, feed, veterinary care, and expert consultants, the farmer must provide critical farming assets.  Farmers' investments in their land, facilities, and other capital improvements reflect significant investment in their businesses, just as with any other business operator who invests in land or buildings.  Moreover, successful farmers are committed to the business and understand the need to properly maintain and potentially improve their facilities to adapt to changing conditions, just as any successful small business must do.

3.  Degree of Permanence of the Work Relationship (§ 795.110(b)(3))

Farmers have substantial leeway to decide whether to conduct business with a particular integrator, and indeed, whether to deploy their farming assets for chicken production at all.  There are a variety of contract terms used in the broiler production industry.  Some contracts operate on a "flock to flock" basis, whereby the farmer and integrator are committed to a business relationship for only a single flock, after which each decides whether to engage for another flock.  Others use one-year terms or multi-year terms.  Typically, however, broiler production contracts do not specify a minimum number of flock placements and can be terminated with notice, and an integrator has incentives to not place a flock with a farmer that does not want it, meaning that in practice any production contract operates as a "project-based" agreement (with the project being raising the flock).  Moreover, while farmers typically contract with a single integrator at a time, they may change and work for a different integrator at the end of a contract.  Further, some chicken farmers operate diversified farming operations, in which case it is important to consider their farming operation in its entirety, which chicken raising being but one component of how the farmer uses his or her farm to generate revenue for the business.

4.  Nature and Degree of Control (Proposed § 795.110(b)(4))

The roles and responsibilities of integrated broiler companies and family farmers are separate and distinct.  While their work is related, family farmers maintain control of their farm, land, buildings, equipment, labor, technology, and subsequent operating expenses.  This level of control does not change if they decide to end their relationship with the contractor.  Farmers may operate as they wish with minimal oversight to produce marketable broilers, exercising complete day-to-day control over their operations, employees, and schedules.  Integrators and farmers typically agree to certain animal raising standards to address bird welfare and treatment, and farmers (as with many other businesses) are expected to raise the birds to meet certain target specifications (e.g., certain weights), but in this sense, independent farmers are no different than any other business that agrees to meet certain customer or client requirements.  Similarly, while integrators may offer consulting services to farmers to help them improve their businesses, the ultimate choice to implement any changes is left to the farmer.  On a daily basis, farmers have significant control over how they go about their business and how they care for their birds.

5.  Extent to Which the Work Performed Is an Integral Part of the Employer's Business (Proposed § 795.110(b)(5))

Having chickens to process is of course important to the integrator's business of chicken processing, but raising the chickens is not itself "integral."  Merriam-Webster defines "Integral"

3

as "essential to completeness."[2] Actually raising the chickens is not "essential" to the act of processing those chickens to create chicken meat. In fact, raising chickens directly is but one of a variety of ways a processor might obtain chickens to process. Chickens could be bought on the open market, and indeed some companies do operate this way. Other meat processing sectors also use spot-market purchases to source animals to varying degrees, reinforcing that raising the birds is not necessarily integral to processing them into chicken meat. The fact that most large chicken companies do not own farms and raise their own birds reinforces that this is not an integral or "essential" part of raising chickens requiring such control that a processor would feel compelled to raise the birds itself, otherwise one would expect more companies to directly raise their chickens rather than contracting out the work.

In reality, this practice is no less integral to chicken processing than other industries that are clearly classified as independent contractors. For instance, third-party sanitation providers that work with food manufacturers are clearly very important to manufacturing food in a hygienic facility that complies with regulatory requirements but without question are considered independent contractors. Likewise, transporting food from the processing plant to retail locations is very important to selling food, but transportation providers are clearly viewed as independent parties. Many other critical aspects of the food industry are similarly important but regularly handled by independent contractors. Finally, to the extent that raising chickens is important – but not integral – to processing chicken meat, the other criteria strongly point to the independence of contract broiler farmers.

6. Skill and Initiative (Proposed § 795.110(b)(6))

Integrators contract with chicken farmers to gain access to their specialized skillset and grow-out facilities that the integrator lacks. While integrators may assist farmers by providing consultant services to improve their operations, the farmers rely on their unique and highly specialized skills to maximize their efficiency and raise the highest quality birds possible at the lowest cost. Moreover, farmers that take the initiative to build their skills, enhance their farms, and make other investments are likely to gain more revenue than farmers who do not.

Viewing the proposed factors together demonstrates that independent chicken farmers would be considered independent contractors under the Proposed Rule. This is consistent with many decades of precedent, and indeed it reflects the mutual expectations on which thousands of independent chicken farmers have built their businesses. Although NCC does not believe that the Proposed Rule is necessary or appropriate with respect to independent chicken farmers, should the Department nonetheless choose to finalize it, NCC urges the Department to make clear that independent chicken farmers are properly classified as independent contractors under the proposed criteria.

To even leave open the possibility of concluding otherwise risks economic disaster for thousands of family farmers and hundreds of rural communities. Independent chicken farmers have long understood themselves to be independent contractors, small businesses leveraging their assets and skills to generate farm revenue. Independent chicken farmers have invested heavily in buying and improving their land and building and maintaining their facilities with the expectation they could contract with integrators to raise chickens. In many cases, these investments are financed based on this expected revenue, and farms are often significant source of intergenerational wealth for rural families. Upsetting this balance risks diverting these revenue streams away from family farmers, undermining their investments, and depriving hard working farmers of the ability to reap the benefits of their investments and hard-earned skills.

---

[2] Merriam-Webster, Definition of "Integral" (definition 1(a)), https://www.merriam-webster.com/dictionary/integral.

4

In light of this, if the Department moves forward with this rulemaking, we urge the Department to confirm that independent chicken farmers continue to be properly classified as independent contractors.

Thank you for your consideration, and please do not hesitate to contact us with any questions regarding these comments.

Respectfully submitted,

*Ashley B. Peterson*

Ashley B. Peterson, Ph.D.
Senior Vice President, Scientific and Regulatory Affairs
National Chicken Council